# ANGUS T. SAWYER *vs.* RUMFORD FALLS PAPER COMPANY.

## Oxford.    Opinion May 31, 1897.

*Negligence.    Fellow-Servant.    Proximate Cause.    Defective Machinery.*

The plaintiff recovered a verdict of $4250 for personal injuries sustained while employed in the defendant's mill. He charged the defendant with actionable negligence in three particulars;—first, the continued use of a defective dynamo-belt with full knowledge of its condition; second, the omission to provide any temporary lights to supply the place of electric lights, which were known by the defendant to be frequently extinguished; and, finally, the retention of a disobedient machine-tender after knowledge of his alleged incompetency and inefficiency.

Upon a general motion for a new trial, it appeared that the case was submitted to the jury on the evidence furnished by the plaintiff only, the defendant offering no testimony. *Held;* that the absence of light was the reason of the plaintiff's failure to seize the lever to save himself from falling; that such an occurrence might be reasonably expected to result from such a cause in the darkness, either in the way it did happen, or in some similar way; and that it must be regarded as the real and proximate cause of the injury.

The plaintiff was injured in attempting to remove broken paper that was choked between the roll and the doctor, when the presses were in motion. He anticipated no more unusual or extraordinary service was required at this time than when he had at other times successfully and safely performed the same service without injury or apparent knowledge of the danger; but he had no knowledge that the paper was choked on the doctor, and only a partial appreciation of the peril involved in his attempt to remove it in the darkness.

Hence, when he stepped upon the platform in obedience to the order of the machine-tender, he understood that he was simply required to render an ordinary service which he had before safely and successfully performed; and obeyed that instinctive impulse to follow the direction of his superior, which is the characteristic of a faithful, resolute and loyal servant, and his conduct is entitled to be viewed in the light of reasonable charity.

*Held;* that while neither the prudence of the plaintiff nor the negligence of the defendant can be regarded as conclusively established, the verdict of the jury is not so utterly without support from the evidence as to justify the court in saying that it is manifestly wrong and must be set aside.

Upon the question of damages, *the court orders,* that if the plaintiff will remit all of the verdict above $2500, within thirty days after receipt of the rescript by the clerk, the motion for a new trial is to be overruled; otherwise, the motion is sustained and the verdict set aside.

ON MOTION BY DEFENDANT,

This was an action brought to recover damages resulting from personal injuries sustained by the plaintiff while employed in the defendant company's paper mill at Rumford Falls. At the trial of the case the defendant's counsel moved for a non-suit, and, the motion being denied, rested upon the evidence already presented. The jury returned a verdict for the plaintiff in the sum of $4250. The defendant company filed a general motion that the verdict be set aside as being against law and evidence, and for excessive damages.

*F. L. Noble* and *R. W. Crockett*, for plaintiff.

Proximate cause: 16 Am. & Eng. Enc. p. 439; 2 Thompson on Negligence, 1805; *Lake* v. *Milliken*, 62 Maine, 240; *Eaton* v. *Boston R. Co.*, 11 Allen, 500; *Pollard* v. *M. C. R. R. Co.*, 87 Maine, 55.

Contributory negligence: *Mundle* v. *Hill Manfg. Co.*, 86 Maine, 405; *Wormell* v. *M. C. R. R. Co.*, 79 Maine, 405; *Smith* v. *Peninsula Car Works*, 60 Mich. 501, (1 Am. St. Rep. 542, and cases cited).

Assuming risk: *Miner* v. *Conn. R. R.*, 153 Mass. 403; *Campbell* v. *Eveleth*, 83 Maine, 55; 4 Am. & Eng. Enc. p. 34.

Fellow-Servants: 7 Am. & Eng. Enc. p. 843; *Flike* v. *B. & A. R. Co.*, 53 N. Y. 549-553; Thompson on Negligence, p. 1031.

*G. A. Wilson* and *H. C. Smyth*, for defendant.

Accidental casualty: *Elwell* v. *Hacker*, 86 Maine, 417; *Nason* v. *West*, 78 Maine, 254; *Brown* v. *Collins*, 53 N. H. 451; *Davis* v. *Saunders*, 2 Chit. R. 639; *Sheldon* v. *Sherman*, 42 N. Y. 486; *Richards* v. *Rough*, 53 Mich. 212; *Sjorgren* v. *Hall*, 53 Mich. 274; *Wormell* v. *M. C. R. R.*, 79 Maine, 403; *Brown* v. *E. & N. A. Railway Co.*, 58 Maine, 387; *Osborne* v. *Knox & Lin. Railroad*, 68 Maine, 51.

Proximate cause: Shear. and Redf. Neg. § 26; Whart. on Neg. § 3. The unexpected giving away of the paper, under the force being used by the plaintiff, was the proximate and sole cause of plaintiff's accident. *Conley* v. *Am. Express Co.*, 87 Maine, 352; *Mil. R. R. Co.*, v. *Kellogg*, 94 U. S. 469; *La. Mut. Ins. Co.*

v. *Tweed*, 7 Wall. 44; *Washington* v. *Balto. etc., R. R.*, 17 W. Va. 190; *Moulton* v. *Sanford*, 51 Maine, 127; *O'Brien* v. *Mc-Glinchy*, 68 Maine, 557; Beven on Neg. 53; *Hofnagle* v. *N. Y. Cen. & H. River R. R. Co.*, 55 N. Y. 611; *Vicars* v. *Wilcox*, 8 East, 1; *Cuff* v. *Newark etc., R. R. Co.*, 35 N. J. L. 32; *Ashley* v. *Harrison*, 1 Esp. 48.

Contributory negligence: Cooley on Torts, 674; *Cassidy* v. *M. C. R. R.*, 76 Maine, 489; Pierce on Railroads, 323; *Mayor* v. *Bailey*, 3 Denio, 433; *Creamer* v. *Portland*, 36 Wis. 92; *Hammond* v. *Muckwa*, 40 Wis. 35; *Otis* v. *Janesville*, 47 Wis. 422; *Strong* v. *Sac. & Pl. R. Co.*, 61 Cal. 321; *Baltimore & Ohio R. R. Co.* v. *Fitzpatrick*, 35 Md. 32; *Manley* v. *Wilmington R. R.*, 74 N. C. 655; *Kerwhacker* v. *Cleveland, etc., R. R.*, 3 Ohio St. 172; *Dash* v. *Fitzhugh*, 2 Lea, (Tenn.) 306; *Houston, etc., R. R.* v. *Gorbett*, 49 Texas, 573; *Bridge* v. *Grand Junction Ry. Co.*, 3 Mee. & W. 244; *Terre Haute, etc., R. R. Co.* v. *Graham*, 95 Ind. 286, 291; *Monongahela City* v. *Fischer*, 111 Pa. St. 9; *Murphy* v. *Deane*, 101 Mass. 455; *Irwin* v. *Sprigg*, 6 Gill, (Md.) 200; *Richmond, etc., R. R. Co.* v. *Anderson's Admr.* 31 Gratt. (Va.) 812; *Washington* v. *B. & O. R. Co.*, 17 W. Va. 190; Beach on Cont. Neg. 2d Ed. § 9, p. 10, § 100, p. 128.

Fellow-servant: Beach on Cont. Neg. § 115, p. 138; *Holden* v. *Fitchburg R. R. Co.*, 129 Mass. 268; *Doughty* v. *Penobscot Log Driving Co.*, 76 Maine, 143; *Blake* v. *M. C. R. R.*, 70 Maine, 63; *Lawler* v. *Androscoggin Railroad Co.*, 62 Maine, 463; *Carle* v. *B. & P. C. & R. R. Co.*, 43 Maine, 269; *Beaulieu* v. *Portland Company*, 48 Maine, 291; *Tunnay* v. *Midland Railway Co.*, Law Rep. C. B. 291; *Feltham* v. *England*, L. R. 2 Q. B. 33; *Gallagher* v. *Piper*, 33 L. J. C. P. 335; *Gillshannon* v. *Stony Brook R. R.*, 10 Cush. 228; *Hurd Admr.* v. *Vt. C. R. R. Co.*, 32 Vt. 473; *Osborne* v. *Knox & Lincoln R. R.*, 68 Maine, 51; *Hodgkins* v. *Eastern R. R.*, 119 Mass. 419; *Shannon* v. *N. Y. & H. R. R.* 62 N. Y. 251; *Farwell* v. *B. & W. R. R.* 4 Met. 59; *U. S. Rolling-Stock Co.* v. *Wilder*, 116 Ill. 100; *Davis* v. *Detroit R. R.* 20 Mich. 105; *Harkins* v. *N. Y. R. R.* 65 Barb. 129; *Hatt* v. *Nay*, 144 Mass. 186; *Indiana R. R. Co.* v. *Dailey*, 110 Ind. 75; *Wright* v.

*N. Y. Cent. R. R. Co.*, 28 Barb. 80; *Russell* v. *Tillotson*, 140 Mass. 201; *Lanning* v. *N. Y. Cent. R. R. Co.*, 49 N. Y. 521; *Lake Shore R. R. Co.* v. *Knittal*, 33 Ohio St. 468; *Kansas Pac. R. R. Co.* v. *Peavey*, 34 Kansas, 474; *Frazier* v. *Penn. R. R. Co.*, 38 Pa. St. 104; *Texas M. R. R. Co.* v. *Whitmore*, 58 Tex. 276; *Kroy* v. *Chicago R. R.* 32 Iowa, 357; *Cregan* v. *Marston*, 126 N. Y. 568; *Kaare* y. *T. S. & I. Co.*, 139 N. Y. 369-378; *Harley* v. *Buffalo Car Mfg. Co.*, 142 N. Y. 31.

Assuming risk: *Tuttle* v. *Detroit etc., R. Co.*, 122 U. S. R. (11 Sup. Ct. Rep. 116); *Texas & Pac. Ry. Co.* v. *Rogers*, 6 C. C. A. 403, (U. S. Cir. Ct. App. Fifth Circuit, June 27, 1893); *Nason* v. *West*, 78 Maine, 258; *Coolbroth* v. *M. C. R. R.*, 77 Maine, 165; *Judkins* v. *M. C. R. R.*, 80 Maine, 418; *Griffiths* v. *London & St. Katherine Docks Co.*, 12 Q. B. Div. 495; *Wheeler* v. *Wason Manfg. Co.*, 135 Mass. 298; *Sullivan* v. *India Manfg. Co.*, 113 Mass. 396; *Fitzgerald* v. *Conn. River Paper Co.*, 155 Mass. 155; *Osborne* v. *Knox & Lincoln R. R.*, 68 Maine, 51; *Plant* v. *Grand Trunk*, 27 Up. Canada Q. B. 78; *Searle* v. *Lindsey*, 11 C. B. (N. S.) 429; *Gibson* v. *Erie Ry.*, 63 N. Y. 449; *Missouri Furnace Co.* v. *Abend*, 107 Ill. 51; *Smith* v. *Sellers*, 40 La. An. 527; *Indianapolis, etc., R. R.* v. *Watson*, 114 Ind. 20.

SITTING: PETERS, C. J., HASKELL, WHITEHOUSE, STROUT, SAVAGE, JJ.

WHITEHOUSE, J.   The plaintiff obtained a verdict for $4250 as compensation for personal injuries sustained while employed in the paper mill of the defendant company at Rumford Falls.   The case comes up on a motion to have this verdict set aside as against the evidence relating to the question of the defendant's liability, and also because the damages are excessive.

The case was presented to the jury on the testimony of the plaintiff and his witnesses, no testimony being introduced by the defendant.

The accident occurred on the 7th day of December, 1894, while the plaintiff was engaged in the service of the company in the

capacity of " third hand " in a gang of four on the No. 2 paper machine in the defendant's mill. At that time he was twenty years old and had been employed in the mill about eighteen months in the aggregate, viz: about five months as a helper in setting up machines, about five months as a " fourth hand " and about seven months as " third hand " on the No. 2 machine. The mill was operated day and night, and on the occasion in question he was on the night gang. About four o'clock in the morning of December 7, by reason of the breaking of the dynamo-belt, the electric lights by which the mill was lighted were suddenly extinguished, leaving the machine room where the plaintiff was employed as well as the rest of the mill in complete darkness. What then happened the plaintiff described in his testimony as follows: " When the light went out I was where the winder is, and I was sitting down with the fourth hand, and the machine tender was down to the wet end, lighting a match once in a while. Six or seven minutes after the light went out the machine tender whistled, and he lighted a piece of paper and we went down, the fourth hand and I; and he gave me the order to pull the broke the [broken paper] off the second press; so I went and I stand on that step and I begun to pull off the broke, and the broke was choked. . . . When I stepped up on that stand I went to pull the broke and I went to pull it out and the paper gave way in my hand and I fell backward, and I went to stop myself from falling and I went to put my hand on the rod or lever, some call it a rod, and I missed that rod and I fell, my hand on the top of the felt, and my hand went between the rolls and it caught my hand here and you see how it cut it." As the result of the accident the plaintiff lost three fingers and a portion of the forefinger of his left hand, and a portion of the outside of the hand itself.

There was evidence tending to show that the dynamo-belt was old and much worn, and being used in a wet place, its strength had become so impaired that it was no longer suitable for use.

It also appears that from different causes, the electric lights had frequently been extinguished prior to this time, on an average two or three times a week, and that they had twice been out for a few

moments, on the night in question, before the time when the accident happened. In anticipation of these contingencies, a supply of lanterns had been provided for temporary use while the electric lights were out in the room where the paper machines were located; but for several months prior to December 7, 1894, none of these lanterns appear to be in existence, and no others had been furnished to take the place of those broken or carried away.

There was, however, on each press of the paper machine, what is termed a friction clutch, which was used to stop one or more of the presses while the machines were still running; and orders had been given by the superintendent to all of the machine tenders to stop the presses whenever the lights went out, and the paper broke in the night time. But there was evidence that this order was disobeyed by the machine tender, who had charge of the operating of machine No. 2, and had been disobeyed by others prior to that time.

In view of this evidence it is contended, for the plaintiff, that there was actionable negligence on the part of the defendant company in at least these three particulars; first, the continued use of a defective dynamo-belt with full knowledge of its condition; second, the omission to provide any temporary lights to supply the place of the electric lights which were known by the defendant to be frequently extinguished; and finally the retention of a disobedient machine-tender after the knowledge of his alleged inefficiency and incompetency. It is confidently urged that as a practical result of these conditions, the plaintiff was required to labor in total darkness in connection with dangerous machinery, and that on the occasion in question, while faithfully and zealously performing his master's work, the plaintiff sustained an injury which he would not have received if the room had been suitably provided with light or with means for lighting it. It is claimed that, although the unexpected breaking of the choked paper which the plaintiff was struggling to draw out of the machine may have been the immediate occasion of his fall, the absence of light was the reason why he failed to seize the lever to save himself from falling; that such an occurrence might reasonably be expected to result from

such a cause, either in the way it did happen or some similar way, and that it must be regarded as the real and proximate cause of the injury.

On the other hand, the learned counsel for the defendant company as confidently argue that there was no causal connection between the temporary absence of light in the machine room and the plaintiff's injury; that the injury was not the ordinary or probable result of the darkness in the room, but was due to the breaking of the choked paper, a wholly unlooked-for and unexpected event, and must be deemed a purely accidental occurrence causing damage without legal fault on the part of any one.

It is also suggested that, as the machine tender was only a fellow-servant, his failure to stop the rolls of the press by the use of the friction clutch was but the negligence of a fellow-servant, for which the defendant is not responsible, if indeed the failure to use it was not the negligence of the plaintiff himself.

It is further contended that the plaintiff was under no obligation to obey directions from any one to labor in an unsuitable and dangerous place, and that if he continued to labor in such a place, or obeyed an order to perform a special service in such a place, with full knowledge and appreciation of the dangers, he must be held to have assumed all the risks incident to the service under such circumstances.

Finally, it is insisted that the plaintiff should be precluded from recovering by his own want of ordinary care and prudence; that after the lights went out he sat for six or seven minutes in a place of perfect safety; if he had remained there no accident would have befallen him; and that the act of stepping from such a place of security into close proximity to the running machinery and of reaching over it to perform a dangerous service in the midst of total darkness, was imprudent and reckless, and must be deemed contributory negligence on the part of the plaintiff.

The principles of law applicable to these several contentions of the parties, on the one side and the other, have been so fully considered and carefully distinguished in the recent decisions of this court, that no further discussion of them can be required on the

motion here presented for a new trial as against evidence. They were elaborately stated and aptly illustrated by the presiding justice in the instructions to the jury to which no exceptions have been taken.                                                    .

The evidence all came from the testimony of the plaintiff and his witnesses, and must receive all the probative force to which it is fairly entitled when thus uncontradicted and unmodified. The evidence tending to show inefficiency and incompetency on the part of the "tender" of the plaintiff's machine is not sufficient to establish the liability of the company on that ground. But the defendant had knowledge that it was a common occurrence for the electric lights to go out, and it is admitted the men were expected to keep the machines in operation and carry on the work during these periods of temporary darkness, provided the paper did not break. It is obvious that there was the same liability that the paper would "break" and also that it would gather and "choke" between the roll and the "doctor" in the night time as in the day time, but with less probability of seasonable discovery. Under ordinary circumstances, however, it involved more trouble, difficulty and delay to stop the presses by means of the friction clutch for the purpose of removing the broken paper and relieving the "choke" on the doctor, than it did to accomplish the same thing while the presses were running. Hence it does not appear that the workmen were ever reprimanded for disobeying the order to stop the presses under such circumstances. The plaintiff had but a limited and imperfect acquaintance with the operation of the machine on which he was working. He had never handled the paper when choked and had received no special instructions touching his duty when the paper broke, except to go upon the platform or step and remove the broken paper while the presses were running. He had several times performed this service without injury or apparent knowledge of danger. On the occasion of the accident, when directed to "pull the broke off the press," he had no knowledge that the paper was choked on the doctor, and only a partial appreciation of the peril involved in his attempt to remove it in the darkness. When he stepped upon the platform, in obedience to the order of the tender,

he understood that he was simply required to render the ordinary service of removing the broken paper which he had before successfully and safely performed. He anticipated no unusual or extraordinary service. requiring greater risk or peril. He doubtless understood that there was a general order that the presses should be stopped at night if the paper broke while the lights were out, but he also knew that this was a custom more honored in the breach than the observance. He was under no obligations to obey an order to remove broken paper while the press was in motion in the darkness, but he evidently believed that he was expected to do it if requested by the machine tender. No accident had happened in so doing prior to that time. He obeyed that instinctive impulse to follow the direction of his superior, which is the characteristic of a faithful, resolute and loyal servant, and his conduct is entitled to be viewed in the light of reasonable charity.

The removal of broken paper choked between the roll and the doctor, while the presses were in motion, was attended with more danger when the lights were out. That the workman might be thrown from his proper position by the sudden giving away of the paper under the force applied to remove it, or in some similar way, was an occurrence which might reasonably have been anticipated and regarded as likely to happen; but the injurious consequence of such an accident might have been avoided if the defendant had exercised reasonable care and diligence in providing sufficient means for lighting the room in the night time. The omission of the defendant to exercise such care, diligence and prudence would thus become the real, efficient and proximate cause of the plaintiff's injury.

After a careful examination of all the evidence and of the arguments of the learned counsel, it is the opinion of the court that while neither the prudence of the plaintiff nor the negligence of the defendant can be regarded as conclusively established, the verdict of the jury is not so utterly without support from the evidence as to justify the court in saying that it is manifestly wrong and must be set aside.

If the plaintiff will remit all of the verdict above $2500, within

thirty days after receipt of the rescript by the clerk, the motion for a new trial is to be overruled. Otherwise the motion will be sustained and the verdict set aside.

*Ordered accordingly.*