ADELBERT H. WILSON

*vs.*

THE AETNA CASUALTY AND SURETY CO.

Kennebec.    Opinion, October 30, 1950.

*William H. Niehoff,* for plaintiff.

*Locke, Campbell, Reid & Hebert,*
*Brooks Brown, Jr.,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

MURCHIE, C. J. The plaintiff and defendant herein will be referred to, respectively, at all times hereafter, as the "insured" and the "insurer," to avoid confusing their present positions with those they occupied in two cases in which the insured was the defendant and the insurer conducted his defense, referred to hereafter, collectively, as the "Desmond Cases." The present litigation grows out of those cases. The insurer, under a policy of insurance, had contracted to defend any actions against the insured seeking damages on account of the operation of a designated automobile, and to pay all sums the insured might become obligated to pay for bodily injuries and property damage caused thereby, not exceeding specified amounts. The coverage for bodily injuries to any one person was $10,000. In the Desmond Cases a minor and his father secured judgments against the insured, aggregating $12,100, applicable to injuries suffered by the minor.

The Desmond Cases were before this court in *Desmond* v. *Wilson,* 143 Me. 262, 60 A. (2nd) 782, under a single bill of exceptions alleging errors in the instructions to the jury on the question of negligence on the part of the minor, and the refusal of certain requested instructions with reference thereto. The exceptions were overruled. Thereafter the insurer paid the judgment of the minor, for $10,000, with the costs and interest applicable thereto, and to the suit of the father. The insured satisfied the judgment of the

father, for $2,100, by giving him a promissory note. He seeks to recover that amount, and interest, in this action. It comes to this court on Report and an Agreed Statement of Facts, referred to hereafter as the "Agreed Statement." It incorporates by reference the testimony, exhibits, pleadings and docket entries in the Desmond Cases. It stipulates that if the insured is entitled to any recovery, judgment shall be given him for $2,160.22, with interest from December 4, 1948 to the date thereof.

The minor was severely injured on August 25, 1947. He was unconscious for two weeks, hospitalized for three, and confined to bed at home for an additional three weeks after leaving the hospital. He was not fully recovered when the cases were tried. The actions against the insured were commenced February 20, 1948. Nine days before the trial commenced, in April 1948, counsel for the plaintiffs in the Desmond Cases advised counsel for the insurer, in writing, that $10,000 would be accepted in settlement of both cases, making it plain that the insurance coverage was known. Two days later, the insurer filed offers to be defaulted for $5,050 in the case of the minor and for $1,550 in that of the father. These offers were immediately rejected.

The policy of insurance gave the insurer complete control over the defense of the insured. Explicit recital was that it should:

> "make such investigation, negotiation and settlement of any claim or suit"

as it might deem expedient. In the particular cases the insurer recognized, early in its investigation, that the minor and his father might secure judgments exceeding the insurance coverage, and notified the insured that it might be advisable for him to employ his own counsel, offering full cooperation with any counsel so employed. It made no attempt to negotiate a settlement, until the offer of settlement was made by the plaintiffs, or thereafter, except to file the default offers. Insured employed counsel, who, after the

settlement offer was made, urged settlement "anywhere within the policy limit."

Reference to the record of the Desmond Cases makes it apparent that there was ample evidence to justify the factual findings of the jury, including the $10,000 damage award. It cannot be said, however, that an aggregate recovery exceeding $10,000 was certain at any time before the trial ended, perhaps not even at that time. The insurer, at all times, had believed, or professed to believe, that liability could not be established, particularly because of the claim that the minor was negligent, although the default offers indicate its recognition of the hazard thereof. The insured insisted, throughout, as the Agreed Statement recognizes, that the negligence of the minor was the sole cause of his injuries. The urging of his counsel for a settlement may indicate a lesser inclination than that of the insurer to be influenced by his statements. On the other hand, it may be that the explanation lies rather in an excess of caution on the part of such counsel, to which reference will be made hereafter.

A neurologist, whose qualifications as an expert were admitted at the trial by counsel then representing the plaintiffs in the Desmond Cases (appearing in the present case for the insured), presented a more hopeful prognosis for the recovery of the minor than another who examined him, in his behalf, a little more than two weeks prior to the trial, or a third, who examined him shortly after the accident. The reports of the two latter were presented as a part of the case of the minor. The verdict awarded the minor indicates that the jury rejected, probably in its entirety, the report and testimony of the neurologist employed by the insurer.

The Agreed Statement recites that prior to the filing of the default offers in the Desmond Cases, counsel for the parties, conferring, computed the expenses applicable to the injuries of the minor, for which his father was seeking re-

covery, at a total of something less than $1,500. The spread between that amount and the $2,100 verdict is accounted for, in part at least, by estimated future expenses, not disclosed at the conference.

The Agreed Statement discloses that counsel for the insurer, prior to the trial, neither interviewed nor questioned three of the police officers who investigated the accident, and did not visit the *locus* thereof until the day preceding. It records also that after the neurologist employed by the insurer examined the minor, he conferred with the one who had examined him approximately two weeks before the trial and adhered to his own judgment. The testimony in the Desmond Cases makes it plain that the examination which laid the foundation for it was made in a period of approximately thirty minutes, something like half of which was devoted to conversation with the mother of the minor "getting the past history." The time devoted by the others to their examinations is not stated.

The insured, in his declaration, alleges that the insurer owed him the duty "to act in good faith and in a careful and prudent manner" in investigating the accident to which the Desmond Cases related and "in the conduct of the defense" thereof, as well as in "the negotiation for settlement." We shall deal with the last of these allegations hereafter, recognizing at the outset that the requirements of good faith and the exercise of proper care in the preparation and conduct of the defense are well established. The case was thoroughly and ably argued by counsel for both parties. Their researches into the decisions of other jurisdictions were exhaustive. It seems unnecessary to review or to analyze the authorities they have cited to us, or any of them, although we declare recognition of the principle of law, on which there seems to be no dispute, that an insurer is liable to his insured for bad faith or for negligence in the preparation or conduct of the defense of any action he has contracted to defend. It is well established also that he may be subject

to liability, under appropriate circumstances, for a failure to accept an offer of compromise.

On the latter question, which involves the duty of an insurer, if any, in the negotiation of a settlement, there is a clean-cut conflict of authority whether liability may be grounded in negligence, or exists only where fraud or bad faith is proved. Identifying the opposing views declared in the decisions as they are designated in Appleman's Insurance Law & Practice, the "bad faith rule" is undoubtedly the majority one, although the author asserts that there is a trend toward "the rule of negligence." Vol. 8, Sec. 4712-3. Without referring to particular cases, cited in the briefs, we note that many of them are identified in the footnotes of Appleman and are discussed, in some aspects, in the following annotations, so cited: 21 A. L. R. 766; 34 A. L. R. 730; 37 A. L. R. 1484; 43 A. L. R. 326; 71 A. L. R. 1467; 131 A. L. R. 1499.

The present case does not require us to give any consideration to the "bad faith rule." The declaration of the insured, although carrying an allegation of the duty of the insurer to act in good faith, carries no assertion of the breach of that duty, nor would such an assertion, if it had been included, find any color of support in the record. The "rule of negligence" is the more favorable one from the standpoint of an insured and is the one on which the insured relies. He alleges specifically that the insurer was negligent in its preparation of the defense of the Desmond Cases on the issues of both liability and damages. His claim with reference to defense on the issue of liability is grounded in the facts, disclosed by the Agreed Statement, that counsel for the insurer did not visit the locus of the accident until the day preceding the opening of the trial and neither interviewed nor questioned, prior thereto, certain witnesses who might have been expected to testify, and did testify, on that issue. There can be no point in this contention if the insurer, without taking either action, anticipated liability,

and believed that the real issue of fact to be tried was the measure of damages. The default offers constitute substantial evidence to that effect. Reference thereto indicates that they must have been made with R. S., 1944, Chap. 100, Sec. 42, and its control over costs, in mind, and that the insurer, anticipating liability, believed that the verdicts might be held below the amounts offered. The facts do not justify a decision that the insurer was negligent in its preparation of the defense on the issue of liability.

Passing to the question of negligence in the preparation of the defense on the issue of damages, it is obvious that we deal only with the case of the minor. In his case the offer of settlement must be regarded as contemplating a recovery not exceeding $8,500, because of the settlement offer and the obvious fact that something like $1,500 of the $10,000 would represent reimbursement of expenses. Once again the costs statute indicates an attempt by the insurer to appraise the damages recoverable if liability was established. The appraisal represents substantially sixty percent of the settlement offer, assuming expenses of $1,500, and is in excess of that percentage when the full recovery of the father is considered. The appraisal was made in part, undoubtedly, on the basis of the report of the neurologist which was rejected by the jury. Council for the insured argues that the insurer was negligent in giving weight thereto because of the limited time devoted to the examination on which it was based. That his qualifications as an expert were admitted when he was offered as a witness is a sufficient answer to this argument. It is not essential that the counsel now urging it is the very one who admitted the qualifications, although that fact may make the decision as desirable as it is inevitable. Counsel cites us to no decided case, nor are we aware of any, which declares that one employing an admittedly qualified expert is under obligation to inquire into the manner in which he has performed his work before relying on his opinion. It may be pertinent to say in this connection that the true issue relates to the reliance the

insurer was entitled to place on his expert at the time of the damage appraisal. The facts do not justify a decision that the insurer was negligent in its preparation of the defense on the issue of damages.

This leaves the issue whether there was negligence in the refusal of the insurer to settle the Desmond Cases for $10,000. The allegations of the declaration pertinent thereto are that the insurer "carelessly and negligently" refused "to accept the offer" of settlement, despite the urging of counsel for the insured. For the purpose of considering these allegations we assume, although declaring expressly that our assumption should not be considered as the expression or intimation of an opinion on the issue, that this court will adopt the "rule of negligence," as distinguished from the "bad faith rule" (the words of Appleman) in "compromise" cases, to use that term as embracing all those in which, after an offer of compromise within insurance coverage is refused, verdicts exceeding it are returned, when a case is presented in which that rule must be accepted or rejected. This is not such a case. In this connection we cannot be unmindful that the urging of settlement by counsel for the insured may have represented an excess of caution on his part. That urging, as already noted, was for a settlement "anywhere within the policy limit." Such a settlement would involve no contribution thereto by his client, who had contracted for limited coverage and was facing a liability, or the possibility of one, in excess of it. Whether advice urging settlement by or on behalf of one who was to contribute to its payment might have more persuasive weight, we do not need to decide at this time. For the purposes of any insured who has contracted for limited insurance coverage, there can be no doubt that any settlement costing him nothing would favor his interest, however slight the hazard to which he was exposed. The situation of the insurer was in sharp contrast to that of the insured. The insurer was obligated to pay such recoveries as might be secured, not exceeding $10,000, and the first $10,000

thereof if the aggregate exceeded that figure. It did not contract to pay $10,000 to relieve the insured from the hazard of a recovery in excess of that amount, but only to pay all sums the insured might become obligated to pay, not exceeding it.

The issue is neither more nor less than whether a contractual liability may be increased by negligent action. We have stated our recognition of the principle that it may, as a result of negligence in the preparation or conduct of a defense. We have said also that for the purposes of this case we shall assume, without deciding, or either expressing or intimating any opinion with reference thereto, that the rule of negligence, as it is styled by Appleman, should be recognized in compromise cases. Within that principle, as we would construe it, if we adopted it, we do not consider that the facts entitle the insured to recover from the insurer.

Reference to *Rumford Falls Paper Co.* v. *Fidelity & Casualty Co.*, 92 Me. 574, 43 A. 503, discloses that in this jurisdiction the holder of limited insurance coverage has been denied recovery against his insurer following an excess verdict after the rejection of an offer of settlement within the coverage. In the earlier case to which that action related, *Sawyer* v. *Rumford Falls Paper Co.*, 90 Me. 354, 38 A. 318, 60 Am. St. Rep. 260, the real issue was liability and this court, in refusing to set aside the plaintiff's verdict in its entirety, on a general motion, recognized that it was in saying that:

> "After a careful examination of all the evidence and of the arguments of the learned counsel, it is the opinion of the court that while neither the prudence of the plaintiff nor the negligence of the defendant can be regarded as conclusively established, the verdict of the jury is not so utterly without support * * * as to justify the court in saying that it is manifestly wrong and must be set aside."

On the basis of the record in the Desmond Cases it cannot be said that there was no reasonable prospect, prior to the trial, that the recovery of the minor might be held to something less than $8,500, or that an appraisal of it at $5,050 by one holden to pay the first $10,000 of whatever it might be, if it should prove to be in excess of $10,000, or all of it, if it was less than that, did not represent the action of a reasonably prudent man. Neither can it be said that such a man, holden personally for the full recovery, whatever it might prove to be, would not have proceeded to trial in an attempt to hold the recovery to the lowest possible figure as an alternative to the acceptance of the settlement offer. That, perhaps, should be the true test.

*Judgment of the defendant.*