WASSERMAN, TRUSTEE IN BANKRUPTCY FOR STEVE
KOREN, INC., APPELLANT, *v.* THE BUCKEYE UNION CASUALTY
COMPANY ET AL., APPELLEES.

[Wasserman v. Buckeye Union Cas. Co. (1972),
29 Ohio App. 2d 7.]

8

■■■■■■■

(No. 30277—Decided January 13, 1972.)

■■■■■■■

*Mr. Frank Leonetti*, for appellant.
*Messrs. Kitchen, Messner & Leyshon*, for appellees.

KRENZLER, J. This is an appeal on questions of law from a judgment of the Common Pleas Court of Cuyahoga County.

Appellant, hereinafter referred to as "plaintiff," is the duly qualified and appointed trustee in bankruptcy for Steve Koren, Inc.

Appellee Buckeye Union Casualty Co., defendant, hereinafter referred to as "Buckeye," issued a liability insurance policy to Koren, Inc., in connection with the operation of its tavern and restaurant business at 1620 E. 66th Street, Cleveland, Ohio. The policy had a standard $10,000 liability limit for damage to one person, and also had the standard provision whereby the insurer would defend any lawsuit against the insured.

One Betty Coventry sustained injuries on the insured's premises and instituted proceedings against the insured Koren, Inc., in the Common Pleas Court of Cuyahoga County for $200,000 in damages. Steve Koren tendered the cause of action to Buckeye for defense under the terms of the policy, and Buckeye engaged the services of an attorney to defend the action. At pretrial Betty Coventry offered to settle the case for $8,500, but Buckeye refused to divulge the policy limits and refused any offer of settlement. Steve Koren was not present or represented by independent counsel at the pretrial discussion nor was he advised of Betty Coventry's offer to settle the case.

The case was tried to a jury, which returned a $60,000 verdict for Betty Coventry against Koren, Inc. Betty Coventry offered to settle her $60,000 judgment for $10,000 while the case was on appeal, but this information was not communicated to Koren, and this offer was rejected by Buckeye. The notice of appeal was timely filed in this court, but due to Buckeye's failure to file a bill of exceptions, the case was dismissed. Koren was not notified of this dismissal.

Steve Koren did not take part in the decisions rejecting all settlement offers, but he agreed that the case should be appealed after judgment was rendered. He was not informed when the appeal was dismissed.

Betty Coventry instituted proceedings to collect on her judgment of $60,000, and to levy upon the assets of Koren, Inc. Koren, Inc., filed a voluntary petition in bankruptcy and Myron Wasserman, plaintiff herein, was appointed the trustee in bankruptcy.

Plaintiff filed this action and alleges that Buckeye conducted an improper investigation and failed to notify Koren of the settlement offer, making it impossible to settle the case, and that $50,000 damages were incurred because of the manner in which Buckeye conducted the handling of the defense in Betty Coventry's personal injury action.

The present case was tried to a jury.

The attorney for Buckeye* testified that he took the affidavit of the bartender, who allegedly witnessed the accident; that he took Betty Coventry's deposition and had her examined by Dr. Steuer and obtained a complete report from University Hospital, plus an investigative report. Based on these facts he made a determination that there was no liability on the part of Koren, Inc., and therefore refused both offers of settlement.

The attorney for Buckeye testified that he did not send any correspondence to Koren in regard to the settle-

---

*It is noted that the attorney for Buckeye in the instant case was not the attorney for Steve Koren, Inc., in the personal injury action entitled "Betty Coventry v. Steve Koren, Inc."

ment offers. The attorney for Buckeye testified that he did advise Koren of the possibility of a judgment in excess of the policy limits and that he should obtain independent counsel; this was denied by Steve Koren. There was testimony that Steve Koren lived in the country a short period of time and did not understand English well.

Steven Koren testified that he was satisfied with the manner in which the attorney for Buckeye handled the litigation.

The only instruction the court gave to the jury on the issue of the good faith of Buckeye, was to state paragraph two of the syllabus in *Slater* v. *Insurance Co.* (1962), 174 Ohio St. 148:

"* * * Now, the court will give you the definition as to bad faith or lack of good faith. It is as follows:

"A lack of good faith is the equivalent of bad faith. And bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imparts a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another. * * *"

The jury returned a verdict for the defendant Buckeye upon which this appeal is taken.

The issue in this case is whether Buckeye acted in good faith in handling the defense in the case of *Betty Coventry* v. *Steve Koren, Inc.*

We are dealing with an important area of law and we must analyze the rights, duties and obligations of an insurer to an insured when the insured is sued for an amount in excess of the policy limits and the case can be settled for less than the policy limits before trial; or after a trial in which a jury returned a verdict in excess of the policy limits. These cases are known as excess liability cases.

The plaintiff's principal assignment of error is that the court's charge to the jury was not a correct statement of the law on bad faith, and that the court should also have charged the jury on the issue of negligence.

In order to resolve the principal issue in this appeal,

we must review the law regarding the liability of an insurer to an insured in excess liability cases.

In this case we are dealing with a liability insurance policy whose purpose is to protect the insured from liability within the limits of policy coverage. The relationship between the the insurer and the insured is created by the terms of the insurance contract. In express terms the liability insurance policy casts no duty on the insurer to settle a claim against the insured.

The pertinent provision of the contract between Buckeye and Koren is as follows:

"* * * *Sec. II. Defense, Settlement, Supplementary Payments*: With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient * * *."

Under such provisions of a liability insurance policy the insurer must either defend, settle or pay any judgment within the policy limits of liability. The insurer is free to negotiate and settle any claims without interference from the insured. An injured third party may be willing to settle his claim for an amount within the policy limits, but the insurer need not settle if he believes that he might defeat the action or keep the verdict within the policy limits.

Serious problems arise when an insurer has an opportunity to settle a claim for an amount within the policy limits but refuses to do so and a judgment is entered against the insured in an amount exceeding the policy limits. So long as there is limited coverage a conflict between the insurer and the insured will exist.

There has been much litigation throughout this country for the past forty years regarding the issue of excess liability. Several rules have developed, including the two

extremes of no liability and absolute liability. In between are the two currently accepted rules of negligence and good faith.

The rule of no liability was predicated on the express terms of the insurance contract which gives the insurer absolute control of the claims against the insured. *Auerbach* v. *Maryland Casualty Co.* (1923), 236 N. Y. 247, 140 N. E. 577; *Rumford Falls Paper Co.* v. *Fidelity & Casualty Co.* (1899), 92 Me. 574, 43 A. 503. An exception to this rule is that liability may attach for acts of fraud or bad faith by the insurer. The law imposes a prohibition against fraud or bad faith in every legal relationship, and therefore it is not necessary to contract for it. *Garcia & Diaz, Inc.,* v. *Liberty Mut. Insurance Co.* (Sup. Ct. Trial Div., 1955), 147 N. Y. S. 2d 306; *Zumwalt* v. *Utilities Insurance Co.* (1950), 360 Mo. 362, 228 S. W. 2d 750; *City of Wakefield* v. *Globe Indemnity Co.* (1929), 246 Mich. 645, 225 N. W. 643; *Best Bldg. Co.* v. *Employers' Liability Assur. Corp.* (1928), 247 N. Y. 451, 160 N. E. 911.

The other extreme theory is that of absolute liability. It has been suggested that under facts similar to the instant case the insurer be liable as a matter of law under a strict liability theory. See *Crisci* v. *Security Insurance Co.* (1967), 66 Cal. 2d 425, 426 P. 2d 173; also see 43 N. Y. U. L. Rev. 199 (1968). While the rule of absolute liability which was discussed but not followed in *Crisci* may have some appeal, it is not the law in Ohio.

As noted above, the two principal rules concerning the liability of the insurer to the insured are the negligence rule which is based on ordinary care and is the minority view, and the good faith—bad faith test, which is the majority view. *Bollinger* v. *Nuss* (1969), 202 Kan. 326, 449 P. 2d 502; *Nationwide Mut. Ins. Co.* v. *Smith* (1967), 280 Ala. 343, 194 So. 2d 505; *Bennett* v. *Conrady* (1957), 180 Kan. 485, 305 P. 2d 823; *Wilson* v. *Aetna Casualty & Surety Co.* (1950), 145 Me. 370, 76 A. 2d 111; *Ballard* v. *Ocean Accident & Guarantee Co.* (7th Cir. 1936), 86 F. 2d 449; *Noshey* v. *American Auto Ins. Co.* (6th Cir. 1934), 68 F. 2d 808; *Best Bldg. Co.* v. *Employers' Liability Assur.*

*Corp., supra; Douglas* v. *U. S. Fidelity & Guaranty Co.* (1924), 81 N. H. 371, 127 A. 708; *Cavanaugh Bros.* v. *General Accident Fire & Life Assur. Corp.* (1919), 79 N. H. 186, 106 A. 604; *Attleboro Mfg. Co.* v. *Frankfort Marine etc., Ins. Co.* (1st Cir. 1917), 240 F. 573.

The weight of authority supports the view that an insurer must act with good faith toward its insured in the defense and settlement of claims which it has the exclusive right to defend and settle and the insurer is liable in damages to the insured for failure to so act. See *Boerger* v. *American General Ins. Co.* (1959), 257 Minn. 72, 100 N. W. 2d 133; *Home Indemnity Co.* v. *Williamson* (5th Cir. 1950), 183 F. 2d 572; *Maryland Casualty Co.* v. *Elmira Coal Co.* (8th Cir. 1934), 69 F. 2d 616; *Noshey* v. *American Auto. Ins. Co., supra; American Mut. Liability Ins. Co.* v. *Cooper* (5th Cir. 1932), 61 F. 2d 446.

Ohio rejected the negligence rule and accepted the good faith doctrine. *Hart* v. *Republic Mut. Ins. Co.* (1949), 152 Ohio St. 185; also see *Slater* v. *Ins. Co., supra; J. Spang Baking Co.* v. *Trinity Universal Ins. Co.* (1946), 45 Ohio Law Abs. 577.

Under both the negligence and good faith rules the insurer must adequately protect the rights of the insured. *Bennett* v. *Conrady, supra; Bollinger* v. *Nuss, supra.*

Some courts have adopted both standards, and an insured can recover if the failure to settle within the policy limits is attributable to either bad faith or negligence of the insurer. *Bollinger* v. *Nuss, supra; State Farm Mut. Auto. Ins. Co.* v. *Jackson* (8th Cir. 1965), 346 F. 2d 484; *U. S. Fidelity & Guaranty Co.* v. *Lembke* (10th Cir. 1964), 328 F. 2d 569; *Dalrymple* v. *Alabama Farm Bureau Mut. Ins. Co.* (1958), 267 Ala. 416, 103 So. 2d 711; *Ballard* v. *Ocean Accident & Guarantee Co., supra; Hilker* v. *Western Auto. Ins. Co.* (1930), 204 Wis. 1, 231 N. W. 257.

Other courts have expressly rejected the negligence test and permitted recovery only if the insurer has failed to exercise good faith. *Maroney* v. *Allstate Ins. Co.* (1961), 12 Wis. 2d 197, 107 N. W. 2d 261; *Radio Taxi Service, Inc.,* v. *Lincoln Mut. Ins. Co.* (1960), 31 N. J. 299, 157 A. 2d 319;

*Murach* v. *Mass. Bonding and Ins. Co.* (1959), 339 Mass. 184, 158 N. E. 2d 338; *Brown* v. *Guarantee Ins. Co.* (1957), 155 Cal. App. 2d 679, 319 P. 2d 69; *Noshey* v. *American Auto. Ins. Co., supra.*

In recent years the two rules of negligence and good faith have had a tendency to coalesce. While some states rejected the negligence rule they do state that an insurer's negligence can be used in determining good faith. *Bollinger* v. *Nuss, supra.*

The right of the insured to recover from the insurer is an action in tort for the breach of a duty owing by the insurer to the insured of exercising good faith and diligence in protecting the rights of the insured. The duty of the insurer to the insured arises because of the relationship of the parties created under the terms of the contract and not under any provision of the policy. *Kunkel* v. *United Security Ins. Co.* (1969), 84 S. Dak. 116, 168 N. W. 2d 723; *Southern Fire and Casualty Co.* v. *Norris* (1952), 35 Tenn. App. 657, 250 S. W. 2d 785; *American Mut. Liability Ins. Co.* v. *Cooper, supra.*

While there is no express duty upon the insurer to settle the claim under the terms of the contract, the relationship between the insurer and insured creates certain obligations and duties upon the insurer. Under the terms of the policy the insured has surrendered his right to investigate, compromise or contest claims to the insurer, knowing that in the event of a claim the insurer will have its own interests to consider, but the insured has the right to assume that his interests will not be abandoned. Because of this relationship a liability insurer who assumes control of a claim against its insured is bound to exercise diligence, intelligence, good faith and honest and conscientious fidelity to the common interests of itself and the insured, and when a conflict of interests arises between the insurer and the insured the conduct of the insurer will be subject to close scrutiny. *Radcliffe* v. *Franklin National Ins. Co.* (1956), 208 Ore. 1, 298 P. 2d 1002.

The duty referred to is that of good faith. An insurer assuming control under its policy must act in good

faith with reasonable diligence and caution. *Tyler* v. *Grange Ins. Assn.* (1970), 3 Wash. App. 167, 473 P. 2d 193; *Groce* v. *Fidelity General Ins. Co.* (1968), 252 Ore. 296, 448 P. 2d 554; *Nichols* v. *U. S. Fidelity & Guaranty Co.* (1967), 37 Wis. 2d 238, 155 N. W. 2d 104; *Cernocky* v. *Indemnity Ins. Co. of North America* (1966), 69 Ill. App. 2d 196, 216 N. E. 2d 198; *Radio Taxi Service, Inc.,* v. *Lincoln Mut. Ins. Co., supra;* *Douglas* v. *U. S. Fidelity & Guaranty Co., supra.*

A good faith decision by an insurer is simply an honest and intelligent one giving equal consideration to the interests of the insured made in light of the insurer's expertise in the field. *McChristian* v. *State Farm Mut. Auto Ins. Co.* (W. D. Ark. 1969), 304 F. Supp. 748; *Nichols* v. *U. S. Fidelity & Guaranty Co., supra;* *Brown* v. *U. S. Fidelity & Guaranty Co.* (2d Cir. 1963), 314 F. 2d 675, 678; *Radcliffe* v. *Franklin National Ins. Co., supra;* *American Fidelity & Casualty Co.* v. *All American Bus Lines* (10th Cir. 1951), 190 F. 2d 234, *cert. den.* 342 U. S. 851; *National Mut. Cas. Co.* v. *Britt* (1948), 203 Okla. 175, 200 P. 2d 407; *Farm Bureau Mut. Auto Ins. Co.* v. *Violano* (2nd Cir. 1941), 123 F. 2d 692, *cert. den.* 316 U. S. 672; *Cavanaugh Bros.* v. *General Accident Fire & Life Assurance Corp., supra.*

Whether the insurer acted in good faith is a question of fact for the jury or the trier of the facts, and the burden of proof is on the one claiming that the insurer did not act in good faith. There is no precise formula to be prescribed for determining the sufficiency of the evidence in determining good faith. Under the majority view various elements have been considered in making this determination. Some or all of them may be applicable in any given case. *Kunkel* v. *United Security Ins. Co., supra;* *State Auto. Ins. Co.* v. *Rowland* (1968), 221 Tenn. 421, 427 S. W. 2d 30; *Baker* v. *Northwestern National Cas. Co.* (1963), 22 Wis. 2d 77, 125 N. W. 2d 370; *Milbank Mut. Ins. Co.* v. *Schmidt* (8th Cir. 1962), 304 F. 2d 640; *Tennessee Farmers Mut. Ins. Co.* v. *Wood* (6th Cir. 1960), 277 F. 2d 21; *Brown* v. *Guarantee Ins. Co., supra.*

Some elements to be considered by the trier of the facts in determining whether an insurer acted in good faith are as follows:

1. How severe is the injury and what is the strength of the claimant's case on the issues of liability and damage and the likelihood of a verdict in excess of the policy limits?

2. Did the insurer make a proper investigation?

3. Did the insurer advise the insured of his right concerning the obtaining of an attorney to look after his interests?

4. Did the insurer advise the insured of his potential liability for any judgment in excess of the policy limits?

5. Did the insurer advise the insured of any possible conflict of interest between insurer and the insured?

6. Did the insurer deal fairly with the insured?

7. Did the insurer inform the insured of any compromise offers?

8. Did the insured demand the case be settled for the policy limits?

9. Did the insurer ask the insured to contribute to any settlement offer?

10. Did the insurer absolutely refuse to discuss and consider any settlement offer

(a) before trial and/or

(b) after judgment rendered in excess of policy limits?

11. Did the insurer insist that the case be tried?

12. Did the insurer insist that the case be appealed after the jury verdict in excess of liability?

13. Did the insured insist that the case be tried?

14. Did the insured insist that the case be appealed after the jury rendered a verdict in excess of the policy limits?

15. Was the insurer negligent in his handling of the entire transaction?

See *Tyler* v. *Grange Ins. Assn., supra*; *Kunkel* v. *United Security Ins. Co., supra*; *Bollinger* v. *Nuss, supra*; *Young* v. *American Casualty Co.* (2nd Cir. 1969), 416 F. 2d 906, *cert. dism'd*, 396 U. S. 997; *Herges* v. *Western Casualty and Surety Co.* (8th Cir. 1969), 408 F. 2d 1157; *State*

*Farm Mut. Auto Ins. Co.* v. *White* (Ct. App. 1967), 248 Md. 324, 236 A. 2d 269; *Coppage* v. *Firemen's Fund Ins. Co.* (6th Cir. 1967), 379 F. 2d 621; *Kaudern* v. *Allstate Ins. Co.* (D. N. J. 1967), 277 F. Supp. 83; *Abernethy* v. *Utica Mut. Ins. Co.* (4th Cir. 1967), 373 F. 2d 565; *Kohlstedt* v. *Farm Bureau Mut. Ins. Co.* (1965), 258 Iowa 337, 139 N. W. 2d 184; *Milbank Mut. Ins. Co.* v. *Schmidt, supra*; *Brown* v. *Guarantee Ins. Co., supra*; *Ballard* v. *Citizens Cas. Co.* (7th Cir. 1952), 196 F. 2d 96; *Bartlett* v. *Travelers Ins. Co.* (1933), 117 Conn. 147, 167 A. 180.

Further, a mistake of judgment is not bad faith. *Bollinger* v. *Nuss, supra*; *Burnham* v. *Commercial Casualty Ins. Co.* (1941), 10 Wash. 2d 624, 117 P. 2d 644; *Mendota Electric Co.* v. *New York Indemnity Co.* (1928), 175 Minn. 181, 221 N. W. 61. A refusal to settle should be measured as of the time the offer was made and not be tested by hindsight. *Ferris* v. *Employers Mut. Cas. Co.* (1963), 255 Iowa 511, 122 N. W. 2d 263; *Bollinger* v. *Nuss, supra.*

It has been held that the fairest method of balancing the interests of the insurer and the insured is to treat the claim as if there were no policy limits applicable and the insurer were liable for the entire amount. *Tyler* v. *Grange Ins. Assn., supra*; *Bowers* v. *Camden Fire Ins. Assn.* (1968), 51 N. J. 62, 237 A. 2d 857; *General Accident Fire & Life Assur. Corp.* v. *Little* (1968), 103 Ariz. 435, 443 P. 2d 690; *Board of Ed.* v. *Lumbermen's Mut. Cas. Co.* (D. N. J. 1968), 293 F. Supp. 541; *Murach* v. *Massachusetts Bonding & Insurance Co., supra*; *Comunale* v. *Traders & General Ins. Co.* (1958), 50 Cal. 2d 654, 328 P. 2d 198; *Cowden* v. *Aetna Casualty and Surety Co.* (1957), 389 Pa. 459, 134 A. 2d 223; *American Fidelity and Casualty Co.* v. *L. C. Jones Trucking Co.* (Okla. 1957), 321 P. 2d 685.

While it is not required that an insurer settle every case when an offer is made within policy limits, the insurer owes the insured a duty of good faith; and, after a jury verdict in excess of the policy limits, the insurer has an even greater duty to the insured, and the good faith test is more exacting at the appeal stage than before or during trial. *Foundation Reserve Ins. Co.* v. *Kelly* (10th Cir.

1968), 388 F. 2d 528, 531; *State Farm Mut. Auto. Ins. Co.* v. *Brewer* (9th Cir. 1968), 406 F. 2d 610; *Bowers* v. *Camden Fire Ins. Assn., supra; U. S. Fidelity & Guaranty Co.* v. *Evans* (1967), 116 Ga. App. 93, 156 S. E. 2d 809; *Hazelrigg* v. *American Fidelity & Casualty Co.* (10th Cir. 1957), 241 F. 2d 871.

We will now turn our attention to the plaintiff's assignment of error regarding the court's instruction to the jury as stated above.

Plaintiff's argument that the court committed error in not charging the jury on negligence is without merit because the Supreme Court of Ohio rejected the negligence rule in *Hart* v. *Republic Mut. Ins. Co., supra.*

The purpose of a court's instructions to a jury is to clearly define the issues in the case and by a statement of the law applicable to the facts developed at the trial to assist the jury in arriving at a proper verdict. *Thomas* v. *Lewis* (1961), 88 Ohio Law Abs. 84.

The instructions ought to have reference to the circumstances of the case, and be so given as to secure the fair consideration and judgment of the jury upon the points at issue. A charge which consists of an extract from an opinion in a reported case having no special reference to the circumstances of the case on trial is objectionable; and where, from the consideration of the whole evidence, it is reasonable to suppose the jury may have been misled by such charge, a new trial ought to be granted. *Marietta & Cincinnati R. R. Co.* v. *Picksley* (1874), 24 Ohio St. 654.

The Ohio Supreme Court adopted the majority view on good faith and held that a liability insurance company which reserves the right to settle any claim as it deems expedient is liable to respond in damages to its insured if it fails to act in good faith with respect to the settlement of such claim. *Hart* v. *Republic Mut. Ins. Co., supra* (152 Ohio St. 185).

The trial court in the present case committed error in its charge on lack of good faith. It was not a complete or

correct statement of the law applicable to the facts in this case.

The court's charge to the jury, set out above, failed to afford the jury the aid it ought to have received from the court. It had no special reference to the facts, circumstances and law in this case, and was merely a short statement on the general subject of fraud and bad faith. The charge ought not only to be correct but to be so adapted to the case and so explicit as not to be misconstrued or misunderstood by the jury in the application of the law to the facts as they find them from the evidence. *Little Miami R. R. Co.* v. *Wetmore* (1869), 19 Ohio St. 110.

It is noted that some courts have equated bad faith with fraud, dishonesty, misrepresentation and deceit. There is no question that if the insurer engaged in this type of conduct it would be liable to the insured in excess liability cases. *Zumwalt* v. *Utilities Insurance Co., supra; Johnson* v. *Hardware Mut. Casualty Co.* (1936), 108 Vt. 269, 187 A. 788; *Best Building Co.* v. *Employers' Liability Assurance Corp., supra.*

However, the liability of the insurer to the insured in excess liability cases is not limited to instances where the insurer's bad faith is fraudulent and dishonest. The majority view is much broader and the conduct required of the insurer in excess liability cases is that of good faith, and a failure to act in good faith is bad faith. The terms "lack of good faith" and "bad faith" have been used interchangeably. Under the majority view, the test of good faith is being faithful to one's duty or obligation. The decision by the insurer to settle or not settle a claim must be honest, intelligent, impersonal, realistic and based on adequate information and tested by the expertise of the insurer. The insurer must also give equal consideration to the interests of the insured.

Obviously, if the insurer's actions were considered fraudulent and deceitful, the plaintiff could recover. However, the plaintiff should also recover if the jury finds that the insurer did not act in good faith under the de-

finition and tests prescribed by the majority view and discussed above.

The trial court's charge on lack of good faith was in error, being limited to bad faith in terms of fraud and deceit. It did not include the broader definition of lack of good faith of the majority view, and thus was not a complete statement of the law of good faith applicable to the facts in the present case.

We therefore reverse and remand for further proceedings according to law.

*Judgment reversed and cause remanded.*

SILBERT and JACKSON, JJ., concur.