**POTOMAC INSURANCE COMPANY,
a Corporation, Appellant,**

v.

**WILKINS COMPANY, Inc., a Corporation, Appellee.**

**No. 8659.**

United States Court of Appeals
Tenth Circuit.

April 18, 1967.

---

Forrest S. Blunk, of January, Gilchrist, Blunk & Johnson, Denver, Colo., for appellant.

Myron H. Burnett, of Burnett, Watson & Horan, Denver, Colo., for appellee.

Before PICKETT, LEWIS and HICKEY, Circuit Judges.

PICKETT, Circuit Judge.

On May 1, 1957, Wilkins Co., Inc., a Colorado corporation, was engaged as a general contractor in a construction project at Torrington, Wyoming. John N. Starks, then 24 years old, who was employed by a subcontractor, fell from the top of a ladder and sustained spinal injuries which rendered him a total and permanent quadraplegic. Starks brought a damage action against Wilkins Company for $750,000, alleging that an employee of Wilkins Company negligently moved an extension cord attached to his electric drill, thereby causing him to fall from the ladder on which he was working.

At the time of the accident Wilkins Company maintained a comprehensive general liability policy with Potomac Insurance Co., a Pennsylvania corporation, with a bodily injury limit of $100,000. In accordance with the terms of this policy, Potomac undertook to defend the action.[1] Before trial an offer was made

---

1. The policy provided:

"II. Defense, Settlement, Supplementary Payments. With respect to such insurance as is afforded by this policy, the company shall:

(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; * * *."

by Starks to settle for $95,000, and during trial, at the close of Starks' evidence, the amount was reduced to $85,000. Wilkins Company's privately retained attorney, William K. Ris, considered that the case could result in a verdict against Wilkins Company in an amount substantially greater than the $100,000 policy coverage, and accordingly he made continuous demand upon Potomac, both before and during the trial, that Starks' claim be settled within the policy limits. Potomac, however, after thorough investigation, insisted that there was no proof of liability on the part of its insured, Wilkins Company, and accordingly, it refused to consider any settlement in excess of $25,000, thus effectively declining all demands to settle.

In 1963, the case was tried to a jury in the United States District Court for the District of Colorado, and a verdict was returned in the amount of $300,048.38. Thereafter, the court granted a new trial, confined solely to the issue of damages. Before the new trial, however, Wilkins Company, through its attorney, and with Potomac's approval, effected a settlement with Starks in the amount of $115,000. Potomac paid its policy limit of $100,000, and Wilkins Company paid the remaining $15,000.

Wilkins Company thereupon brought this suit to recover the excess, claiming that Potomac negligently and in bad faith failed to settle Starks' claim within the $100,000 policy limit.[2]

Throughout these proceedings Potomac has maintained that it acted with diligence in the investigation, preparation and conduct of the trial, and that it afforded equal consideration to the interests of its insured, Wilkins Company. The trial court, sitting without a jury, found that Potomac was not negligent in its investigation of the accident or its preparation of the case for trial; that the case was properly tried; that the conclusion of Potomac's counsel as to the absence of liability on the part of Wilkins Company was arrived at honestly. As to the issue of good faith, however, the court, after commenting upon the closeness of the Starks case and the uncertainties of litigation, found as follows:

> "But certainly the defendant and its counsel realized that there was always the chance that their judgment and opinion would be wrong, and that this case could result in a verdict, and if it did, they certainly were advised of the probabilities that there would be a very substantial excess judgment.
>
> \* \* \*
>
> The evidence does not disclose any consideration by the company of the effect upon Wilkins and Company if they failed to accept this settlement, and all this, in view of the fact that if a judgment or a verdict was rendered in favor of the plaintiff in that Civil Action 7068, that the verdict almost had to be well in excess of the policy limits.
>
> \* \* \*
>
> So the Court finds that the defendant Potomac Insurance Company did not act in good faith. \* \* \*"

It is asserted by Potomac that the evidence is not sufficient to establish that it was guilty of bad faith in refusing to settle Starks' claim before or during trial. It is well established that the law imposes upon the insurer the duty to exercise diligence, intelligence, good faith, and honest and conscientious fidelity to the common interest of the insured as well as itself in determining whether to accept or reject an offer of settlement. While the insurer may properly give consideration to its own interest, it must in good faith give at least equal consideration to the interest of

---

2. Wilkins Company's complaint alleges that:

"The defendant Potomac Insurance Company was negligent and acted in bad faith in refusing and failing to settle such claims before the conclusion of the trial in the case of Starks, et al. vs Wilkins Company, Inc. within the Policy limit as it had an opportunity to do and as it was requested and demanded by the plaintiff Wilkins Company, Inc. to do."

the insured, and if it fails to do so, it acts in bad faith. United States Fidelity and Guaranty Co. v. Lembke, 10 Cir., 328 F.2d 569; Moore v. United States Fidelity and Guaranty Co., 10 Cir., 325 F.2d 972; Traders & General Ins. Co. v. Rudco Oil & Gas Co., 10 Cir., 129 F.2d 621.

We are satisfied that when tested by this standard, the trial court's judgment is well supported by the evidence. It is apparent that the cause of Starks' accident was somewhat unclear and that his case against Wilkins Company was largely circumstantial. Potomac's counsel, after examining the results of Potomac's investigation of the accident, concluded that at the time Starks fell there was no one near the extension cord which was supplying electricity to his drill; he further concluded that the absence of certain safety measures amounted to strong evidence of contributory negligence on the part of Starks. It was therefore the position of Potomac that there was no evidence from which Starks could establish a prima facie case against Wilkins Company and that the suit should be settled only on a nominal basis. Wilkins Company's attorney, however, concluded that there was sufficient circumstantial evidence to indicate that Howard R. French, an employee of Wilkins

Company, pulled the extension cord and caused the accident, and that the case would therefore be submitted to the jury. He accordingly transmitted his views to Potomac in writing, and demanded that the claim be settled within the policy limits. It is apparent that there was indeed considerable conflict in the evidence. French's own statements contradicted each other with respect to whether he moved the cord before or after Starks' fall. There was evidence that French was moving toward the cord immediately before Starks fell. And there were conflicting statements from other workmen as to whether Starks, upon having just fallen, indicated initially that it was no one's fault or that he was jerked off the ladder.[3]

It is clear that Wilkins Company, through its counsel, persisted in its demand that the suit be settled within the $100,000 policy limit. And it is equally clear that Potomac steadfastly refused to negotiate above the amount of $25,000. While we do not cast upon Potomac the requirement of prescience, we nevertheless are satisfied that the nature of Starks' suit indicated a reasonable possibility that the case would be submitted to a jury and that a recovery substantially in excess of the $100,000 policy limit would result. Potomac was aware of the

---

3. During the trial of the instant case, one of the attorneys who had prosecuted Starks' suit against Wilkins Company related several points of circumstantial evidence, developed from his investigation of the matter, upon which he had based his opinion that Starks would be able to recover a judgment substantially in excess of $100,000. He stated:

"The evidence established the following facts:

(1) The ladder was on solid and dry and level ground.

(2) The cord was tied to the ladder near the top.

(3) The cord ran from the ladder across the work area to a hole in the south wall about 20 feet out.

(4) Some force pulled the ladder over.

(5) Only French was near the cord and the ladder. No one else could have jerked it.

(6) Only Wilkins employees were in the building except Applegate, who was far from the cord.

(7) Starks saw French walking toward the cord seconds before the fall.

(8) Starks exclaimed to Myers immediately after the fall that someone jerked the cord.

(9) Stillwagon said he wanted the cord moved away from the tractor which was working in that area.

(10) Stillwagon said he might have told French to move the cord.

(11) French was available in the witness room throughout the trial. The defendant did not call him or the other witnesses he promised the jury he would call.

(12) The defendant offered no evidence.

Now those are the reasons, I think that required submission of this case to the jury on the question of negligence, and the strong probability that they would so decide, and they did."

potential of excess liability.[4] It is apparent that Potomac, by refusing to negotiate a settlement above $25,000, unduly subjected Wilkins Company to liability substantially in excess of its policy coverage, and in so doing, did not afford equal consideration to the interests of Wilkins Company. Accordingly, we agree with the trial court's determination that Potomac did not act in good faith respecting the matter of settlement negotiation.

■ It is further asserted by Potomac that Wilkins Company is estopped from maintaining this action because it voluntarily effected a settlement at a time when there was no final judgment in the case. The policy of insurance contained the following condition:

"13. Action Against Company. No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

It is Potomac's position that this provision estops Wilkins Company to recover from Potomac because there could be no final judgment in the case until the issue of damages had been retried. We think,

however, that the language employed by this court in Traders & General Ins. Co. v. Rudco Oil & Gas Co., supra, 129 F.2d at 627–628, provides a ready answer to this contention. Referring to "a prudent settlement made by the (insured) in the face of a potential judgment far in excess of the limits of the policy," the court stated:

" * * * (W)e think it may be fairly stated that before (the insurer) may interpose the voluntary settlement made by (the insured) as a bar to recovery upon the policy, it must be shown that it acted, not alone in furtherance of its own interest, but it must also appear that it acted in good faith and dealt fairly with the (insured). Its manifest attitude and course of conduct must have some legal justification and factual basis."

Potomac was at all times aware of the negotiations. It participated in the settlement agreement to the full extent of its obligations under the policy, and thereby waived its right to retrial on the issue of damages. Potomac is in no position now to complain that Wilkins Company violated the terms of the policy.

Finally, it is urged that the court erred in denying Potomac's motion for additional findings. We conclude that the findings are adequate for proper disposition of the case.

Affirmed.

---

4. Upon cross-examination, an official from Potomac's home office testified as follows:
"Q. You knew that if this case went to a jury, it would either result in the verdict considerably above your policy limits of $100,000.00 or in a verdict in favor of the defendant; didn't you? A. I will not necessarily concede that this was a probability; definitely a possibility.
Q. All right.
The Court: Well, Mr. McCloud, why do you say it is only a possibility? I mean, now let me tell you what is going through the Court's mind, and maybe you can answer it better.
The Witness: Yes, Your Honor.
The Court: Here you have medical expense and loss of earnings to date, if my recollection is correct, somewhere between 40 and 50 thousand dollars. And you had a loss of earnings in the future. The man was totally and permanently disabled, plus whatever allowance you would make for some medical expense, and that in itself, as I recall, brought the total claim considerably in excess of $100,-00. Now, why do you say 'possibility' instead of 'probability?' Now those are not pain and suffering. There is nothing for general damages. These are special damages that were proved, and actually there was little contest on them. Don't you think that's a probability?
The Witness: With the Court's permission, I will amend my answer.
The Court: Very well.
The Witness: I think I will say, yes, a *probability* in the event of a verdict for the plaintiff." (Emphasis added.)