LESLIE BOWERS, PLAINTIFF-APPELLANT, v. CAMDEN FIRE INSURANCE ASSOCIATION, DEFENDANT-RESPONDENT.

Argued October 24, 1967—Decided January 22, 1968.

64

*Mr. Milton L. Silver* for appellant.

*Mr. Roy D. Cummins* for respondent (*Messrs. Orlando & Cummins,* attorneys; *Mr. George H. Hohweiler,* of counsel).

The opinion of the court was delivered by

FRANCIS, J. Plaintiff Leslie Bowers obtained a judgment against defendant Camden Fire Insurance Association for $9,000, plus interest, representing the excess over the limit of coverage of his liability policy of a judgment against him in an automobile accident suit. The Appellate Division reversed, 93 *N. J. Super.* 302 (*App. Div.* 1967), and this Court granted certification, 49 *N. J.* 20 (1967).

Prior to May 21, 1961, the Association had issued an automobile liability insurance policy to Bowers. By its terms, the Association agreed to pay on his behalf all sums which he became "legally liable to pay as damages" because of bodily injuries suffered by any person in an accident arising out of the operation of the insured vehicle, up to a limit of $20,000. The policy reserved to the insurer the right to "make such investigation, negotiation and settlement of any [covered] claim or suit as it * * * [deemed] expedient."

On May 21, 1961, in the daylight hours, plaintiff Bowers was involved in an accident while driving his automobile on Clinton Street in Clayton, New Jersey. The car came into

contact with Albert Seagrave, a 21-months old infant who was in the street at the time. There were no eye witnesses and no one said Bowers was driving at an unreasonable speed. He did not see the little child before the impact. There were no cars parked along the curb at or near the scene to obstruct his vision. He first became conscious that something had happened when he felt and heard a thump on the right side of his car. He stopped and found the child lying behind his right rear wheel. At this time the right side of the car was at least eight feet away from the curb. The child was taken to the hospital immediately.

Clinton Street is a residential area. Bowers was familiar with it and knew that children played along and in the street. The accident happened in front of the Seagrave boy's home located on the right side of the street in the direction in which Bowers' car was proceeding. As he approached the Seagrave home, he had a clear view of the lawn in front of it, the sidewalk and the grass plot between the sidewalk and the curb and the street.

After the accident, Bowers immediately notified his insurer, and it undertook the investigation of the circumstances and the Seagrave child's injuries. At this time it was Bowers' view that he had not been guilty of negligent driving which caused the mishap. Thereafter, a suit was brought against him in the Superior Court, Law Division, to recover damages for the child's injuries and for the consequential losses sustained by his father. In accordance with its policy obligation, the Association undertook the defense thereof.

The investigation had revealed that the child's injuries were serious. After examining the various medical and hospital reports, the attorney who was engaged by the insurer to defend the suit concluded that if the trial resulted in a verdict for the plaintiff, it would probably exceed the policy limit of $20,000. As he put it in the present case, "to me, it was a very serious case on the injury end." Therefore, in accordance with the Association's practice in such cases, he wrote Bowers calling attention to the serious nature of the

injuries. He advised that if a verdict exceeded the policy limit, Bowers would be personally responsible for the excess. The letter also informed him that he could, if he wished, engage a personal attorney to cooperate in defense of the law suit. Bowers decided against retaining independent counsel.

The record is unclear on the matter of settlement prior to trial. Plaintiff's attorney had no clear recollection of submitting any settlement demand. The insurer's attorney testified that he offered $12,000 or $14,000, probably $14,000, but the offer was neither accepted nor was any counter-proposal made. The complaint in the present action, however, alleges that prior to trial of the damage suit, the Seagraves' attorney offered to settle their claims for the policy limit, $20,000. The answer of the insurer admits that fact. In any event, the case proceeded to trial.

At the trial, the evidence of Bowers' negligence was purely circumstantial. The jury found it sufficient, however, and returned a verdict of $20,000 for the infant and $9,000 for his father's consequential losses. After the verdicts were returned, defense counsel discussed the matter with Bowers, who indicated he still felt he was not responsible for the accident. During this conversation, when advised of his right of appeal, Bowers indicated that he favored such an appeal.

Thereafter, defense counsel first sought a new trial. The grounds urged were that as a matter of law the facts proved were insufficient to justify verdicts for the plaintiffs, and that the verdicts were contrary to the weight of the evidence. After hearing argument, the trial court denied the motion. At the time the motion was argued, and before a decision was rendered, the Seagraves' attorney told the court and defense counsel that if the insurance carrier would pay its limit of $20,000, he would recommend that his clients accept it in settlement of the $29,000 judgments. Later that day, this $20,000 offer of settlement was repeated by letter to Bowers' insurer-provided attorney. The offer was conditioned upon termination of the litigation. This letter, which was admitted in evidence in the suit on the policy over defend-

ant's objection, expressed the opinion that a successful appeal was unlikely. Defendant was warned also that if it was unwilling to settle on the basis suggested, "and unreasonably gambles on the result of an appeal," it "could be held liable" for the excess of the judgments because of a failure to act in good faith on behalf of its insured. Four days later, Bowers was notified by the carrier's attorney that the motion for new trial had been denied. The letter advised him of Seagraves' offer to settle for $20,000, and told him also that the Association had refused because "it feels as I do, and also as you have indicated to me you felt, that there was no evidence from which the jury could have found negligence on your part, and the reasonable course is to appeal on that ground." Consequently, an appeal had been authorized. Bowers' consent to the appeal was not requested, nor was his viewpoint sought on the matter. It was suggested, however, that if he had any questions he should consult his personal counsel.

Bowers testified in the present action that this letter was the first notice he had that the Seagraves would take $20,000 in payment of the $29,000 judgments. He said also that if he had known that fact after the verdict against him he would not have indicated to trial counsel that he favored an appeal. In any event, he engaged a personal attorney, as the Association had suggested, and after consultation they decided the appeal should not be prosecuted. A letter was then written to the insurer's attorney informing him that in light of the offer of settlement, Bowers no longer favored an appeal. The view was expressed also that there was no reasonable probability of success on appeal. Therefore, the Association was requested to make the settlement and advised that good faith required it to take such action. The letter concluded with notice that failure of the appeal would result in a suit by Bowers against the insurer for the excess of the judgment over the policy limits.

It appears also that in addition to this letter, the matter was discussed by the two attorneys. In the discussion, Bowers'

personal attorney said he would not take an appeal. He voiced the opinion that the trial judge's ruling on the motion for a new trial—that the evidence of Bowers' negligence was sufficient to send the case to the jury—ought to be regarded as dispositive. Nevertheless, the offer of settlement was not accepted, nor was any counter-offer of a sum less than $20,000 made to the Seagraves. The appeal was pursued. After argument in the Appellate Division, a short *per curiam* opinion was filed affirming the $29,000 judgments. It pointed out that the sole grounds of the appeal were that there was insufficient evidence of Bowers' negligence to submit the issue to the jury, and that the trial court erred in refusing to grant the defense motion for a judgment of involuntary dismissal. As to these claims, the court said almost summarily, "we conclude that the proofs were sufficient to submit the issue of such alleged negligence to the jury."

Following the affirmance, the Association paid its $20,000 insurance limit on the judgments. Shortly thereafter, Bowers instituted the present suit on the policy to recover the $9,000 excess plus accrued interest. The claim as submitted to the jury was predicated upon the charge that the insurer's refusal to accept the offer to settle the judgments for $20,000 had violated its duty to exercise good faith in the settlement of claims and judgments against Bowers. On that narrow issue the jury found against defendant and returned a verdict in favor of the insured for $9,000, plus interest. The appeal now before us involves that issue alone. Bowers does not assert that the Association was negligent in investigating the automobile accident, or in the preparation for the trial of the case. Nor does he charge that any duty toward him was violated because of the failure to effect settlement with the Seagraves prior to or during that trial.

As indicated above, under the liability policy issued to Bowers, the Association reserved control of the settlement of claims against him that were within its coverage. In *Radio Taxi Service, Inc. v. Lincoln Mut. Ins. Co.*, 31 *N. J.* 299 (1960), this Court laid down the general rule that such

reservation, viewed in light of the insurer's obligation to pay on behalf of the insured up to the policy limit all sums which he shall become legally obligated to pay, imposed upon the insurer the duty to exercise good faith in settling claims against him. We said that a decision not to settle must result from weighing, in a fair manner, the probabilities of a favorable or adverse verdict in the trial of a covered damage suit against the insured. We pointed out that the purpose of this type of insurance is to protect the insured from liability within the limits of the contract. The courts, we said, cannot allow the insurer to frustrate that purpose by a selfish decision as to settlement which exposes the insured to, and which results in, a judgment beyond the specific monetary protection which his premium purchased.

██ Good faith is a broad concept. Whether it was adhered to by the carrier must depend upon the circumstances of the particular case. A decision not to settle must be a thoroughly honest, intelligent and objective one. It must be a realistic one when tested by the necessarily assumed expertise of the company. In cases like the present one, where the insurer recognizes the probability that an adverse verdict at the trial will exceed the limit of its policy, the boundaries of good faith become more compressed in favor of the insured. This potential exposure to a judgment for which he is only partly protected makes it obvious that ordinarily the interests of the insurer and the insured come into conflict whenever a settlement demand is presented which is within the limit of the coverage.

██ When it is probable that an adverse verdict will exceed the policy limit, the propriety of an insurer's refusal to accept a settlement offer which is within the coverage requires a resolution of conflicting interests. In our judgment, in view of the duty of the insurer to act in good faith, the resolution can lead to but one fair result: both interests can be served justly only if the insurer treats any settlement offer as if it had full coverage for whatever verdict might be recovered, regardless of policy limits, and makes its decision

to settle or to go to trial on that basis. That rule, which we deem to be the appropriate one, has been applied in other jurisdictions in such cases.

For example, in *Murach v. Massachusetts Bonding & Ins. Co.*, 339 *Mass.* 184, 158 *N. E.* 2d 338 (1959) it was said that to mitigate the danger that the insurer will favor its own interests to the exclusion of the insured's, good faith requires it to decide whether to settle a claim within the limits of the policy or to try the case as if no policy limit were applicable to the claim.

So too, in *American Fidelity & Cas Co. v. L. C. Jones Trucking Co.*, 321 *P.* 2d 685, 687 (*Okl.* 1957) the court declared the proper rule to be "that both parties' interests must be given the same faithful consideration. The fairest method of balancing the interests is for the insurer to treat the claim as if the insurer alone were liable for the entire amount." To the same effect see *Kaudern v. Allstate Ins Co.*, 277 *F. Supp.* 83 (*D. N. J.* 1967); *Crisci v. Security Ins. Co., Cal.*, 58 *Cal. Rptr.* 13, 426 *P.* 2d 173 (1967); *Kinder v. Western Pioneer Ins. Co.*, 231 *Cal. App.* 2d 894, 42 *Cal. Rptr.* 394 (*Dist. Ct. App.* 1965); *Davy v. Public Nat'l Ins. Co.*, 181 *Cal. App.* 2d 387, 5 *Cal. Rptr.* 488 (*Dist. Ct. App.* 1960).

As we have said, there is no charge here of lack of good faith in failing to settle the Seagraves' claims before or during trial. The complaint relates to defendant's action in taking and prosecuting an appeal from the over-the-policy-limit judgments when a settlement could have been made on payment of the limit, and either refraining from an appeal, or withdrawing the appeal before the adverse determination in the Appellate Division. As we have noted above, the sole issue submitted to the jury was whether that action constituted a good faith discharge of its duty toward Bowers.

█ It seems obvious that application of the good faith test must be more exacting at the appeal stage of the proceedings than before or during trial. *Hazelrigg v. American Fidelity & Casualty Co.*, 241 *F.* 2d 871 (10th *Cir.* 1957). Since settlement could have been made at that time for the policy

limit, which represented the full extent of the protection Bowers had paid for, he was the one whose interests were really put in jeopardy by the appeal. At that juncture, only the insurer stood to benefit by it.

 The trial judge's denial, in the automobile case, of the motion for judgment for defendant because in his opinion negligence sufficiently appeared to support a jury verdict, the jury's finding that Bowers' negligence was a proximate cause of the accident, and the trial judge's later denial of a new trial after a thorough review of the evidence, were new and significant factors that could not be ignored by the insurer. These factors, capped by the Seagraves' offer to settle for the policy limit to avoid the appeal, added stronger acid to the test of good faith. At this point certainly the carrier could not be partial in any way to its own interest. The insured had the right to assume that the duty to protect him would not be subordinated in the slightest because of the prospect that an unsuccessful appeal would cost no more than the proposed settlement. This meant that a decision to appeal could not spring from optimism unrelated to the realities of the situation. In our judgment, in circumstances such as existed in the present case, where the insurer alone can profit from a refusal to settle, the facts must point to the probability of a reversal. If such a likelihood does not appear, good faith can be demonstrated only by making the proposed settlement. What, then, is the consequence if the offer of settlement is refused and the appeal is lost, and the insured subsequently sues the insurer to recover the excess portion of the judgment? If the evidence is such as to create any reasonable basis for disagreement among reasonable minds as to whether the insurer discharged its duty of good faith, the question must be submitted to the jury or fact finder for determination.

 Defense counsel characterizes the damage suit as an unusual one because Bowers' negligence in the operation of his car had to be shown circumstantially. But courts and members of the bar, especially those with some expertise in

the trial of cases, know that if the circumstances are sufficient to generate a reasonable inference of negligence, frequently the inference is more potent than eye witness testimony. Moreover, it is well known that the search for this inference must be engaged in by looking at the circumstances in the light most favorable to the injured plaintiff. It was a simple matter at this trial to keep attention focused on the question of whether Bowers' driving was a culpable cause of the mishap. It was the only issue in the case on liability. No defense of contributory negligence was asserted against the 21-months old infant.

We are thoroughly satisfied that sufficient inferences of Bowers' negligence arose from the circumstances appearing in the record to require submission of the question to the jury. The position of the car in the street at the impact, the location of the child's body with respect to the rear of the car, the probability that the child was in the street as Bowers approached, and the absence of any substantial obstruction to vision all serve to justify a jury finding that the incident would not have occurred had Bowers been making reasonably effective use of his powers of observation. Further, we agree with the trial judge's refusal to reverse himself and set aside the verdicts of the jury for the infant and his father. Consideration of the motion to set aside the judgments involved an even more deliberate evaluation of the facts adduced at the trial because of the cases presented by defense counsel in support of his contention that under the law there was no jury question. Incidentally, substantially the same cases, none of which was directly in point factually, were relied upon in the subsequent appeal to the Appellate Division.

The reported opinions of our courts over many years demonstrate that the instances are rare in negligence cases when an appellate tribunal reverses a trial court's finding that the evidence was sufficient to support a jury verdict. That fact is well known to the trial bar, as the expert witness for the plaintiff testified here. Defendant's expert, who was trial counsel in the negligence case and who had handled "over a

half dozen" appeals at the time this case was tried, declined to concede the fact, saying he had no statistics on the subject. But whatever the state of his knowledge, obviously it was greater than that of Bowers. Certainly Bowers, who had much to lose if the Association pursued an unsuccessful appeal, was entitled to assume that the insurer's representatives were reasonably aware of the circumstances which create an inference of negligence. Further, he was entitled to assume that the insurer had knowledge of the generally unfavorable results of appeals based upon the claim that there was a complete absence of evidence of negligence, and that such knowledge would be acted upon as though defendant would be bound to pay the full $29,000 if an appeal were unsuccessful.

Defendant's witnesses gave three reasons for the decision to appeal: (1) Bowers' feeling before and during the trial, and after the adverse verdict, that he was not at fault for the child's injuries; (2) an infant was involved in the case and there was no guaranty that the trial court would approve a settlement of $20,000 since it would probably mean a reduction of the injury judgment; and (3) on the facts adduced at the trial, the law was "unclear" as to whether sufficient evidence of negligence had been introduced to make a jury question, and, as they saw the law, there was a reasonable basis for an appeal with a "probability of success." Whether good faith was exercised in refusing to settle by paying the policy limit requires a general consideration of these reasons.

As to (1), it must be remembered that Bowers is a layman. His feeling of non-liability after the accident, and even after the adverse verdict and before the appeal, was of minor importance when the defendant was called upon to decide whether, *as a matter of law,* the facts of the accident, as they were developed at the trial, pointed to the probability of reversal of the judgments. The view of a layman untrained in the law is a weak reed for an insurer to lean on. Moreover, it is obvious that before trial of the negligence case,

defendant's alleged reliance on Bowers' belief that he was not at fault was not an unqualified or unquestioning one. Defendant's settlement offer of $12,000 or $14,000 of its $20,000 policy demonstrates that fact. When defendant sent its rather self-serving letter to Bowers, referring to his feeling of non-responsibility and advising him of the decision to appeal, the suggestion was made that he consult personal counsel if he had any questions on the subject. He adopted the suggestion and received independent legal advice indicating the slim chance of reversal. Whatever may have been his earlier layman's notion about his responsibility for the accident, it underwent a change. As a result, he and his attorney protested the appeal and requested that the offer of settlement of $20,000 be accepted. More specifically, his attorney notified defendant of his opinion that there was no "reasonable probability" of a reversal. Moreover, he informed defendant that Bowers' interest should not be jeopardized by an appeal, and that good faith on its part required acceptance of the Seagraves' offer. He concluded by saying that if an appeal was taken unsuccessfully, and Bowers became obligated to pay a part of the judgments, suit would be brought against defendant for that part.

The Seagraves' attorney who tried the negligence case was called as an expert witness by Bowers in the present case. He had a great many years of experience in the trial of such cases. His letter, written to the insurer's attorney after denial of the motion for a new trial and offering to take $20,000 in settlement of the judgments, was admitted in evidence. The letter contained his opinion that no appeal could be undertaken successfully, and that if the insurer was not willing to pay the policy limit immediately and "unreasonably gambles" on the result of an appeal, it could be held liable for the excess over the limit. The Appellate Division declared that this letter should not have been admitted in evidence. It was within the trial court's discretion to admit the first part of the letter containing the offer to settle for $20,000. Most of the opinion portion could have

been introduced through the oral testimony of the witness as an expert, and it seems obvious that the court considered the letter in that light. The letter did state the law; the reference to possible liability on defendant's part if it took an unreasonable gamble is consistent with this Court's like comment in *Radio Taxi Service, Inc. v. Lincoln Mut. Ins. Co., supra,* where this Court used the phrase "unduly venturesome" at the expense of an insured. 31 *N. J.,* at *p.* 313. Although we agree that at least the latter portion of the letter should have been excluded, yet in view of its hypothetical nature, the warning contained in Bowers' personal attorney's letter, and the explanation in the court's charge to the jury as to the duty of the insurer and the nature of the issue to be decided, we cannot say that the error in admitting it was so prejudicial of itself as to require reversal.

The effect of these two letters was to set out in bold relief the nature of the risk defendant would be taking if it persisted in pressing the appeal. Such action thereafter was entirely on its own; even defendant's unrealistic assertion of reliance upon the original view of non-liability expressed by its layman-insured now provided no real support for the projected appeal.

Reason (2) is frivolous. The suggestion is that settlement was not made because an infant was involved and there was no guaranty that a court would approve whatever distribution of the $20,000 settlement might be proposed as between the father and child. Defendant made no inquiry of the trial court or any other court with regard to approval of a $20,000 settlement on any basis of distribution. Moreover, if a court was advised that Seagraves' attorney's credit report on Bowers indicated doubtful financial ability to pay the additional $9,000 of the judgments, we consider it highly unlikely that approval of the settlement would have been withheld.

The last reason is argued more assertively by defendant, *i. e.,* that the law was unclear on whether the facts proved at the Seagraves-Bowers trial were sufficient to create

an inference of Bowers' negligence, and that defendant's view that they were not sufficient would probably prevail on appeal. Certainly there was nothing unclear about the applicable principle of law. It was simply whether Bowers had failed to use reasonable care in the operation of his automobile, which failure was a proximate cause of the accident. The principle was to be applied according to the equally commonplace rule that the facts adduced had to be evaluated in the light most favorable to the plaintiff's case. In the last analysis, the crucial part of reason (3) is whether, in view of the duty to exercise good faith in dealing with an offer of settlement in cases like this one, where the insured's personal financial jeopardy is so great, it was reasonable to believe on the facts that a probability of reversal of the judgments existed.

Substantial evidence was presented at the trial that the chance of a reversal of the judgments was minimal. The suggestion by the attorney who took the appeal for the insurance company was that the Appellate Division opinion was "per curiam" because "no judge wanted to actually take the responsibility for putting his name" on it, shows little appreciation of the work of the judges or of their judicial integrity. The correct view was expressed by the attorney who defended the appeal; the opinion was a short *per curiam* because its merits warranted no more.

Under all the circumstances shown by the record here, the reasons advanced for the appeal strike us as excuses rather than reasons. Since the proposed settlement required payment of the full policy limit, on the face of things, defendant had nothing to lose by prosecuting an appeal, even if unsuccessful. (It should be recalled, however, that defendant made no counter-proposal to the settlement offer of $20,000. Who can say at this time whether the Seagraves' attorney would have accepted somewhat less than $20,000, if tendered?) We find it difficult to believe that if the policy had been for an unlimited amount defendant would have acted the way it did. The inferences are strong that in making the decision

to appeal the Association was partial to its own interests. They likewise show strongly a willingness to gamble with the insured's money in an attempt to save its own. And they tend to negative any claim that the decision to appeal the $29,000 judgments represented the conscientious exercise of the expertise it is reasonable to suppose defendant possessed as an insurer. A finding that an insurer lacked good faith in a situation like the present one does not signify that it acted maliciously or with ill will toward the insured. It simply means that the insurer failed to discharge the fiduciary obligation which is inherent in the duty to act in good faith in the matter of settlement of claims against him.

For the reasons set forth, we are satisfied the trial court was correct in submitting to the jury the issue of defendant's good faith in refusing to accept the offer to settle the judgments against Bowers for the amount of the policy limit. Since no other contention raised by defendant demonstrates prejudicial trial error, the verdict in favor of Bowers must be regarded as sound. Accordingly the judgment of the Appellate Division is reversed and the judgment of the trial court is reinstated.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, GOLDMANN, SCHETTINO and HANEMAN—7.

*For affirmance*—None.