406 F.2d 610
 STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation, Appellant and Cross-Appellee,
v.
Donald L. BREWER, Administrator of the Estate of William Ira Pate, deceased, Appellee and Cross-Appellant.
 No. 21670-A.
 United States Court of Appeals Ninth Circuit.
 November 29, 1968.
 
 Otto R. Skopil, Jr. (argued), of Williams, Skopil & Miller, Salem, Or., for appellant.
 James J. Kennedy (argued), of Ryan & Ryan, Portland, Or., for appellee.
 Before HAMLIN, KOELSCH and BROWNING, Circuit Judges.
 KOELSCH, Circuit Judge.
 
 
 1
 This is a diversity action governed by Oregon law, commenced and prosecuted by the administrator of the estate of William Ira Pate, deceased, (hereinafter Administrator) against State Farm Mutual Insurance Company to recover damages for failure to settle the claim of one Donald L. Brewer against Pate within the limits of a $10,000 automobile liability insurance policy issued by State Farm. It is the aftermath of a suit for personal injuries prosecuted by Brewer against Pate in an Oregon State court. State Farm had undertaken Pate's defense pursuant to a reservation of rights provision in its policy of the kind commonly contained in liability policies. See Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv.L.Rev. 1136, 1137 (1954). When the verdict went for Brewer — the amount being $42,415.25 — State Farm moved for a new trial. But, upon its denial, State Farm took no appeal. Instead it paid into court the amount of its policy limits plus costs.
 
 
 2
 The gravamen of Administrator's complaint in this action was that State Farm was negligent and did not exercise good faith in refusing to settle the claim. Specifically he asserted that State Farm rejected Brewer's settlement offers made both before trial and again during the pendency of the motion for new trial.
 
 
 3
 The district court concluded that State Farm was legally justified in rejecting all pre-verdict settlement offers, but that it was "careless and negligent and acted in total disregard of the interest of its insured in failing and neglecting to consummate a settlement of the liability of the insured by payment of the policy limits after verdict and prior to the court's ruling on the motion for new trial"; it entered judgment awarding Administrator the amount of the excess judgment in the personal injury action plus attorney's fees.
 
 
 4
 The matter is here on State Farm's appeal and Administrator's cross-appeal. We affirm.
 
 
 5
 The accepted rule, followed by the Oregon courts, is that a liability insurer who assumes the defense of a claim against its insured in excess of the limits owes the latter a duty with respect to its settlement. Radcliffe v. Franklin Nat'l Ins. Co., 208 Or. 1, 298 P.2d 1002 (1956) (See esp. 208 Or. at 33, 298 P.2d 1002); Hilker v. Western Auto. Ins. Co., 204 Wis. 1, 231 N.W. 257 (1930), aff'd on rehearing, 204 Wis. 1, 235 N.W. 413 (1931); Annot. 40 A.L.R. 2d 170 (1955). The duty is not absolute but is one of "due diligence and good faith." Kuzmanich v. United Fire & Cas. Co., 242 Or. 529, 532, 410 P.2d 812 (1966). And as the Oregon Supreme Court has declared in the Radcliffe case:
 
 
 6
 "The insurer, obviously, has a right to give heed to its own interests when it considers settlement offers, but when it does so it must give at least as much attention to those of the insured. * * * When an accident occurs, followed by a claim asserted by the injured person, the common interests of the insured and the insurer are in jeopardy. Although the company, in dealing with the situation, has a right to consider its own interests, it has no right to sacrifice those of the insured. The decision made in such a situation must be an honest one, it must be made in good faith and with due consideration for the interests of the insured." (208 Or. at 47, 298 P.2d at 1023)
 
 
 7
 We need not determine whether or not the district court erred in finding that prior to entry of verdict State Farm fully met its obligation to Pate. We merely note that during that period it would have been extremely difficult to predict what the outcome of the suit would be; that the principal question was who was at fault in the accident; that the collision had occurred at a street intersection when Pate was engaged in making a left turn with his automobile and either struck or was struck by Brewer's approaching motorcycle; that Pate's version of the facts, which was confirmed in part by an eyewitness, exculpated Pate and pointed to Brewer as the one responsible; and that under Oregon law Brewer's contributory negligence, if proven, would have afforded Pate a complete defense to the claim. Maser v. Klein, 224 Or. 300, 304, 356 P.2d 151 (1960).
 
 
 8
 However, we conclude that the district court was fully justified in its further findings on which liability was rested. First: Substantial proof appears in the record to support Administrator's allegations that Brewer tendered, and State Farm rejected, settlement offers after the verdict was rendered; the most that can be said concerning State Farm's assignment of insufficiency of evidence on that issue is that there was proof both ways. Second: The record also contains evidence tending to show State Farm's lack of good faith and due diligence.
 
 
 9
 We agree with State Farm that an insurer's duty to settle does not become absolute upon rendition of an adverse verdict and judgment [Chancey v. New Amsterdam Cas. Co., 336 S.W. 2d 763 (Tex.Civ.App.1960)] and that the right to seek a new trial or to appeal ought not to be automatically foreclosed. But we also point out that at such a late stage of a case the insurer owes the insured an "even greater duty" [Foundation Reserve Ins. Co. v. Kelly, 388 F.2d 528, 531 (10th Cir. 1968)] to give due consideration to the matter of settlement.
 
 
 10
 There are, no doubt, cases in which an insurer is justified in rejecting a postverdict offer to settle, but this is not one of them. The fact of Pate's liability had been found by a jury and there had been no dispute that Brewer suffered serious injury — indeed his special damages alone amounted to more than $12,000. The verdict, as already noted, was well in excess of the policy limits and exposed Pate to considerable financial peril. In these circumstances we think that an insurer would be well advised to move for a new trial only if his motion is especially well supported and likely to be granted. But State Farm's motion manifestly was not, and it is apparent that State Farm labored under no illusion on that score. At the time it was filed, Pate's trial counsel, an experienced personal injury lawyer, in a very comprehensive report to the company, stated that "There may be some error in this case, but probably none sufficient to justify a reversal." He recommended settlement and explained that the motion was being filed "principally for psychological reasons" in dealing with Pate's attorney. In addition, State Farm's local claims superintendent was more than a little chary about the prospects of a successful appeal and also recommended settlement of the claim. These appraisals of the motion's lack of merit and State Farm's concurrence in that estimate are also confirmed by later events for, as already noted, no appeal was taken.
 
 
 11
 Still further, it is significant that at the trial of the instant case State Farm did not seek to justify its refusal to settle because of a belief that a new trial would be granted because of legal errors at the trial but asserted merely that its belief was based upon the ground of newly discovered evidence. Even granting that the facts constituting such evidence were "newly discovered" and would have been competent, they were hardly such as would result in a new trial; they did not relate to the merits of Brewer's claim but simply to his credibility as a witness. Moreover, the rule in Oregon is well settled that "Applications for a new trial on the ground of newly discovered evidence are not favored. They are viewed with distrust and are construed with strictness." State v. Ellis, 232 Or. 70, 89, 374 P.2d 461 (1962).
 
 
 12
 As a further ground for reversal, State Farm urges that no cause of action accrued because neither Pate nor his estate suffered actual loss. It points to the fact that Pate himself never paid the excess judgment, that his administrator has not done so, and that the assets comprising Pate's estate are not sufficient to satisfy preferred claims.
 
 
 13
 The question whether prepayment or its equivalent is an essential ingredient of a claim by an insured against his insurer has been and still is the subject of widespread judicial disagreement. Some courts hold that it is, while others conclude entry of judgment against an insured completes his claim against the insurer. 11 U.C.L.A.L.Rev. 382 (1964).
 
 
 14
 Our own research has not revealed a decision by an Oregon court announcing a definitive rule on the subject, nor have counsel referred us to any. We are thus at liberty to apply the rule which we believe is most consistent with reason and justice. In National Farmers Union Property & Casualty Co. v. O'Daniel, 329 F.2d 60 (9th Cir. 1964) this court, recognizing the differing views, went on record in favor of the "judgment rule." We find no compelling reason to reconsider that decision.
 
 
 15
 State Farm's final point presents a more difficult problem. The district court awarded Administrator attorney's fees on the basis of an Oregon statute which, so far as need be noticed, permits the award of such fees to a successful plaintiff in "an action * * * brought * * * upon any policy of insurance * * *." Or.Rev.Stat. 736.325(1) (1965) as amended Or.Rev.Stat. 743.114(1) (1967). The statute has not been judicially construed by an Oregon court and State Farm contends that it is inapplicable to actions of this type; its position, succinctly stated in its brief, is that: "this is not an action upon the policy of insurance issued by the appellant but is an action sounding in tort. * * *"
 
 
 16
 Probably the number of cases that hold or state that a liability insurer's duty to settle sounds in tort exceeds those in which the conclusion is that the obligation is one based upon contract. (Keeton, supra, 67 Harv.L.Rev. 1136, 1138 n. 5; 18 Stan.L.Rev. 475, 476 and n. 7). The rationale of the courts following the "majority" view rest upon the premise that the policy is silent on that subject; the duty therefore arises because of the relationship of insurer and insured created by the contract, not upon any provision in the policy. See American Mutual Liability Ins. Co. of Boston, Mass. v. Cooper, 61 F.2d 446 (5th Cir. 1932); Zumwalt v. Utilities Ins. Co., 360 Mo. 362, 228 S.W.2d 750, 756 (1950). The courts that express the minority view deduce from the terms of the policy a covenant by the insurer to settle in an appropriate case. They reason that the reservation of rights provision in such policies evidences the parties' mutual recognition concerning the matter of settlements and a commitment by the insurer to afford the insured protection by settlement. See Hilker v. Western Auto. Ins. Co., 204 Wis. 1, 231 N.W. 257 (1930), on rehearing, 204 Wis. 1, 235 N.W. 413 (1931); American Fidelity & Cas. Co. v. Greyhound Corp., 258 F.2d 709 (5th Cir. 1958).
 
 
 17
 Our consideration of both lines of decision convinces us that the latter view reflects the true engagement of a liability insurer and should be followed.
 
 
 18
 It was of course the purpose of the insurance contract to create duties and liabilities.
 
 
 19
 "The parties know when they made this contract that a large percentage of these cases are settled without litigation, and that such adjustments were one of the methods of protecting the interests of the insured which were commonly used to discharge the duty imposed upon these companies by their policies. That this was in the minds of the parties when they made this contract is shown by the fact that the policy takes from the insured all right to adjust any claim, and requires him to aid the company in effecting a settlement."[1]
 
 
 20
 Hilker v. Western Auto. Ins. Co., 231 N.W. at 258. And as that court explained on rehearing, these considerations coupled with the purpose of such policies clearly afford a sound and persuasive basis for implying a covenant to settle. (235 N.W. at 415).
 
 
 21
 On his cross-appeal Administrator argues the district court's award of attorney's fees was inadequate. The district court allowed Administrator $4,000 for that purpose although the latter's request, based upon a contingent fee agreement to pay his attorney an amount equal to 40 per cent of any judgment secured against State Farm, amounted to over $12,000.
 
 
 22
 The Oregon attorney's fee statute, previously mentioned, empowers a trial court in its discretion to allow a successful plaintiff in a suit upon a policy of insurance "such additional sum as the court may adjudge to be reasonable as attorney fees." Or.Rev.Stat. 736.325 (1) (1965), as amended Or.Rev.Stat. 743.114(1) (1967). It may be invoked and an allowance made even though the suit was prosecuted on a contingent fee basis [Denley v. Oregon Auto. Ins. Co., 151 Or. 42, 57-58, 47 P.2d 245, 47 P.2d 946 (1935)] and a trial court may properly consider the contract in fixing the fee; however, the fee contract, constituting a private agreement between client and attorney, is in no sense binding on the court even though it conforms to a minimum schedule of fees adopted by the State Bar Association. Buckles v. Continental Cas. Co., 197 Or. 128, 139, 251 P.2d 476, 252 P.2d 184 (1953). Nothing appears in this case to indicate that the trial court's allowance was grossly inadequate or whimsical. In fact, we believe the court decision was fair both to Administrator and State Farm.
 
 
 23
 One matter remains. Administrator requests further compensation for his attorney pursuant to an Oregon statute [Or.Rev.Stat. 743.114(2) (1967)] which is applicable to appeals, including those to this court [Michigan Millers Mut. Fire Ins. Co. v. Grange Oil Co., 175 F.2d 540, 544, 10 A.L.R.2d 209 (9th Cir. 1949)]. Considering the matter we conclude that an allowance should be made and that $1,000 is a reasonable sum.
 
 
 24
 The judgment is affirmed; Administrator is allowed attorney's fees of $1,000.
 
 
 
 Notes:
 
 
 [1]
 Radcliffe v. Franklin Nat'l Ins. Co., supra, suggests that the Oregon Supreme Court was thinking in terms of contract as the basis of the duty, for in the sentence immediately preceding the conclusion that "policies of this kind grant the insurer jurisdiction over settlements and require of them a duty in regard thereto," the court reiterated that "the issues which we must decide is how much protection was promised to the Radcliffes by the insurance company when the policy at bar was issued." 208 Or. at 37, 298 P.2d at 1019