CRABB, Respondent v. NAT'L IND. CO., Appellant

(205 N.W.2d 633)

(File Nos. 11035, 11041. Opinion filed March 23, 1973)

Costello, Porter, Hill, Banks & Nelson, Rapid City, for defendant, appellant, and cross respondent.

Robert Varilek, Rapid City, for plaintiff, respondent, and cross appellant.

HANSON, Justice.

This is an action by a judgment creditor against an insurer to recover the balance remaining unpaid on a wrongful death judgment. The amount sought is an excess of the insured's policy limits.

The defendant insurer, National Indemnity Company, had issued an automobile liability insurance policy to Sylvester Wade, with a limitation on liability of $10,000 for the death or injury of one person. On May 27, 1966, while the policy was in effect, Wade was involved in a motor vehicle-pedestrian accident which resulted in the death of John A. Ripple. Wade was thereafter charged with and found guilty of second degree manslaughter alleged to have been committed while operating a motor vehicle in a negligent manner and while under the influence of intoxicating liquor. The conviction was affirmed by this Court on June 12, 1968, in State v. Wade, 83 S.D. 337, 159 N.W.2d 396.

On November 13, 1967, the plaintiff, Samuel W. Crabb, as special administrator of the Ripple estate, commenced a wrongful death action against Wade, seeking damages in the amount of $30,000. National Indemnity retained William G. Porter of Rapid City, as legal counsel. Mr. Porter informed Wade the wrongful death action involved a claim for damages in excess of the policy limits and he had a right to retain personal counsel. At the time Wade was represented in the criminal action by William Rensch as court-appointed counsel. Mr. Rensch was also authorized to communicate and cooperate with Mr. Porter in the defense of the

wrongful death action. In the criminal action Wade was instructed to invoke the Fifth Amendment. It was also decided by Mr. Rensch and Mr. Porter that Wade would not appear and testify in the civil action.

Prior to the trial of the wrongful death action plaintiff submitted oral and written offers to settle the action for the policy limit of $10,000. These offers were refused by the insurer.

During the trial of the wrongful death action defendant's motion for a directed verdict was denied and the issues were submitted to a jury which returned a verdict for plaintiff in the amount of $20,000. After the trial, defendant's motion for judgment n. o. v. was denied. Thereafter, plaintiff again offered to settle the action within the policy limits. Wade and his counsel both demanded that National Indemnity accept the offer. Upon the advice of its counsel the insurer refused the settlement demand and an appeal was perfected. National Indemnity's intention to appeal was not communicated to Wade or his counsel.

On April 30, 1969, this Court affirmed the wrongful death judgment in Crabb v. Wade, 84 S.D. 93, 167 N.W.2d 546. National Indemnity partially satisfied the judgment by paying $10,000, the limits of its policy, plus interest and costs, on May 23, 1969. On June 26, 1969, Wade assigned all the claims, demands, and causes of action which he might have against the insurer to the Special Administrator of the Ripple Estate.

· The present action was instituted by the Special Administrator against National Indemnity to recover the unpaid balance of $10,000 on the judgment rendered in Crabb v. Wade because of the insurer's alleged wrongful refusal to settle the wrongful death action within the policy limits. The issues were submitted to a jury which returned a verdict for the Special Administrator in the amount of $10,000. The defendant insurer appeals from the judgment. The plaintiff also cross appeals from an order denying the allowance of attorney's fees and prejudgment interest.

■ The principal issue is whether the defendant insurer is liable for the excess judgment because of its refusal to settle

within the limits of the insured's liability policy. Cases from other jurisdictions involving this subject range from no liability to absolute liability. Where recovery is permitted it is usually allowed upon the grounds of negligence, or bad faith, or a fusion of the two. This Court in harmony with the majority view, approved recovery under the bad faith rule in Kunkel v. United Security Ins. Co. of New Jersey, 84 S.D. 116, 168 N.W.2d 723. In an extensive opinion on the subject the Court pointed out that good faith is a broad and comprehensive term which has to be determined by the particular facts and circumstances in each case. In considering what constitutes good or bad faith the interests of the insured must be given "equal consideration" with those of the insurer and in making a decision to settle or try a case "the insurer must in good faith view the situation as it would if there were no policy limits applicable to the claim". Various factors were then set forth which should be considered in determining the issue.

Tested by the above standards there is ample evidence in the record, viewed in a light most favorable to the verdict, to sustain the excess judgment rendered against the insurer in this case. The facts surrounding the accident as reported in Crabb v. Wade, supra, show that decedent Ripple was an airman stationed at the Ellsworth Air Force Base. He was 22 years of age, single, and an exceptionally bright, intelligent, and capable young man. About 9:00 in the evening of May 27, 1966, he was returning to the Base walking north on the right-hand shoulder of the access road leading to the Main Gate. He was wearing suntan trousers and a green jacket. While so walking he was struck and killed by a hit-and-run driver.

There were two eyewitnesses to the accident. They testified a 1962 or 1963 black Chevy II station wagon was being driven fast, and weaved back and forth from one side of the road to the other. As they followed the station wagon on the access road leading to the Main Gate of the Air Base they observed it drift from the center of the road to the right until it appeared to strike a pedestrian. The station wagon did not stop after the accident and Ripple's body was not discovered in the ditch until the next morning. Wade did not appear or testify at the trial of the

wrongful death action but he did admit, in his answer, that a 1963 Chevy II black station wagon struck and caused Ripple's death. There was ample proof in the record to show Wade was operating the station wagon and was under the influence of intoxicating liquor at the time of the accident. In comparison, decedent Ripple violated a statutory rule of safety by walking on the right-hand shoulder of the road instead of the left-hand side.

In evaluating all of the salient facts, including a review of testimony in the manslaughter trial, Mr. Porter was of the opinion the plaintiff could not prevail in the wrongful death action. In his judgment the decedent Ripple was guilty of negligence more than slight, as a matter of law, and such negligent conduct was a contributing cause of his death. It is now the position of the insurer that it cannot be held liable for the excess for its alleged wrongful refusal to settle within the policy limits as it "simply and purely" relied upon the professional advice of counsel on a question of local law.

 While the insurer's position was recognized in Ferris v. Employers Mutual Casualty Company, 255 Iowa 511, 122 N.W.2d 263, we do not agree that reliance on counsel is the sole decisive test of good faith in the present action. It is merely one factor to be considered. An insurer cannot discharge its entire responsibility to an insured "by simply employing a competent attorney and abiding by his decision concerning advisability of settlement". Keeton, "Liability Insurance and Responsibility for Settlement", 67 Harvard L.Rev. 1168. All the relevant factors bearing on the issue must be considered. Dumas v. Hartford Accident & Indemnity, 94 N.H. 484, 56 A.2d 57; Board of Ed. of Bor. of Chatham v. Lumbermen's Mut. Cas. Co., D.C.N.J., 293 F.Supp. 541; Potomac Insurance Company v. Wilkins Company, 10 Cir., 376 F.2d 425.

 Before and during the trial the insurer was advised of the strength of claimant's case on the issues of liability and damages and in the event the issues were submitted to a jury a verdict in excess of the policy limits would no doubt be rendered. This is evident from the following: (1) the complaint alleged damages in the amount of $30,000 for the wrongful death of a bright young man; (2) the answer admitted the insured's car struck and killed

Ripple; (3) the insured Wade had been convicted of manslaughter in connection with the death; (4) the insured was intoxicated and driving recklessly at the time of the accident; (5) the issues of proximate cause and comparative negligence would be submitted to the jury; (6) before trial in a letter to the insurer Mr. Porter summarized the prospect "So the picture from the insured's point of view is a bleak one if his conduct, and his conduct alone, is to be considered * * * It's a fair bet that if we go to a jury on this case, we're going to get stuck"; (7) a reserve in the amount of $10,000 was set up to cover the loss, and (8) during the trial Mr. Porter again advised the insurer the situation looked bleak as reflected in his notation of a telephone call on February 20, 1968, "2-20-68—Call to Bill Lyons—advised status of trial (bad—booz—etc.)—don't settle he says—go forward."

After the judgment in excess of the policy limits had been entered and defendant's motion for judgment n. o. v. had been denied the insurer again flatly refused to consider an offer to settle within the policy limits. At this juncture the insurer sought an independent appraisal and evaluation of the case from an attorney at law in Minneapolis. However, before receiving this opinion the claims manager for the insurer directed Mr. Porter to appeal. The appeal was taken without ever consulting or advising the insured. These are "added factors" bearing on the issue of bad faith. Wasserman v. Buckeye Union Casualty Co., 29 Ohio App.2d 7, 277 N.E.2d 569.

We recognize an insurer's duty to settle does not become absolute upon rendition of an adverse verdict and judgment and the right to appeal ought not be automatically foreclosed. State Farm Mutual Automobile Insurance Co. v. Brewer, 9 Cir. 1968, 406 F.2d 610. However, the good faith test has been held to be more exacting at the appeal stage than prior to or during trial. After a jury verdict in excess of the policy limits, the insurer has an even greater duty to the insured. Hazelrigg v. American Fidelity & Casualty Co., 10 Cir. 1957, 241 F.2d 871; Foundation Reserve Ins. Co. v. Kelly, 10 Cir. 1968, 388 F.2d 528; State Farm Mutual Automobile Insurance Co. v. Brewer, supra; United States Fidelity & Guaranty Co. v. Evans, 116 Ga.App. 93, 156 S.E.2d 809, aff'd 223 Ga. 789, 158

S.E.2d 243; Bowers v. Camden Fire Ins. Assoc., 51 N.J. 62, 237 A.2d 857; Wasserman v. Buckeye Union Casualty Company, supra; 40 A.L.R.2d 168.

■ In refusing to consider a settlement after the excess judgment was rendered the insured was exposed to a far greater financial risk than the insurer by an appeal. "[W]here the insurer alone can profit from a refusal to settle, the facts must point to the probability of a reversal. If such a likelihood does not appear, good faith can be demonstrated only by making the proposed settlement." Bowers v. Camden Fire Ins. Assoc., supra. When the appeal is lost the issue of good faith is one for the jury.

We conclude the jury in this case could reasonably find from all the existing circumstances that the insurer violated its fiduciary relationship by not giving "equal consideration" to the interests of the insured in its constant refusal to discuss or consider a settlement within the policy limits before and after the trial of the wrongful death action.

The defendant insurer also contends that before an insured under a liability insurance policy, or his assignee, may recover an excess judgment it must first be shown the insured was damnified by payment of the judgment or has property or money subject to execution and levy. A similar contention was fully answered by the Minnesota Court in Lange v. Fidelity & Casualty Company of New York, 290 Minn. 61, 185 N.W.2d 881,* as follows:

"Defendant contends that even if there was no reasonable tactical or economic consideration justifying its refusal to settle, its refusal was justified by the fact that the insured was not injured by the excess judgment since he was insolvent. In this regard, defendant cites Norwood v. Travelers Ins. Co., 204 Minn. 595, 598,

---

* In this decision the Minnesota Court expressly overruled the case of Norwood v. Travelers Ins. Co., 204 Minn. 595, 284 N.W. 785, which was cited in defendant insurer's brief. Likewise, the case of Universal Automobile Ins. Co. v. Culberson, 126 Tex. 282, 86 S.W.2d 727, which was also cited and relied upon in the defendant insured's brief on this point was subsequently overruled by the Texas Court in Hernandez v. Great American Insurance Co. of New York, Tex., 464 S.W.2d 91.

284 N.W. 785, 786, in which there is language which arguably might be interpreted as indicating that a judgment-proof insured does not suffer any resulting injury from his liability insurer's 'bad faith' refusal to settle.

Because we believe that a judgment-proof insured does indeed suffer injury when a claimant obtains a judgment against him in excess of liability insurance policy limits, we now overrule language in the Norwood case to the contrary, and hold, as most states hold, that an insured may bring an action against his insurer for 'bad faith' refusal to settle whether or not the insured has paid, or can pay, that part of the judgment which exceeds the policy limits. A judgment-proof insured suffers injury from a judgment against him in excess of policy limits because such a judgment will potentially impair his credit, place a cloud on the title to his exempt estate, impair his ability to successfully apply for loans, and may eventually require him to go through bankruptcy. Further, if the rule were that a judgment-proof insured suffers no injury from an excess judgment, an insurer's responsiveness to its well-established duty to give equal consideration to an insolvent insured's interests would tend to become meaningless."

It is the entry of a final judgment in excess of the policy limits, rather than its satisfaction, which harms the insured and gives rise to a cause of action against the insurer for a wrongful or unreasonable refusal to settle within the policy limits. State Farm Mutual Automobile Insurance Co. v. Brewer, 1968, 9 Cir., 406 F.2d 610; Terrell v. Western Casualty Company, Ky., 427 S.W.2d 825. Therefore, the present action could properly be brought without prior payment or proof of ability to pay the excess judgment by Wade. See 7A Appleman, Insurance Law and Practice § 4712, at p. 574; Lange v. Fidelity & Casualty Company of New York, 290 Minn. 61, 185 N.W.2d 881; Brown v. Guarantee Insurance Company, 155 Cal.App.2d 679, 319 P.2d 69, 66 A.L.R.2d 1202. As to assignability see also General Accident Fire & Life Assur. Corp. v. Little, 103 Ariz. 435, 443 P.2d 690; Groce v. Fidelity General Insurance Company, 252 Or.

296, 448 P.2d 554, and annotation "Assignability of insured's right to recover over against liability insurer for rejection of settlement offer" in 12 A.L.R.3d 1158.

Wade testified that when he assigned his cause of action to plaintiff he was relieved, by agreement, from further responsibility toward the satisfaction of the judgment. The record does not indicate whether this "agreement" was oral or written or its nature and extent. In any event, it does not defeat the assignment. The judgment remains of record against Wade. It constitutes a lien against his real property, if any, and obviously has an adverse effect on his credit record. Dumas v. State Farm Mutual Automobile Ins. Co., 111 N.H. 43, 274 A.2d 781. The agreement by plaintiff to attempt collection of the balance due on the judgment against National Indemnity instead of Wade was the whole purpose and consideration for the assignment. See Bailey v. Prudence Mutual Casualty Co., 7 Cir., 429 F.2d 1388, and Gray v. Nationwide Mutual Insurance Company, 422 Pa. 500, 223 A.2d 8.

The insurer's final contention relative to the admission of expert testimony is without merit and does not warrant an extended discussion.

## CROSS APPEAL

Following entry of judgment plaintiff cross appellant filed a statement of costs and disbursements which included attorney's fees in the amount of $5,660.55 and prejudgment interest on the $10,000 balance remaining unpaid from May 23, 1969 to June 3, 1970, at the rate of 6% for the total of $1,216.66. The trial court disallowed the two items as taxable costs.

The attorney's fees are claimed to be taxable under the provisions of SDCL 58-12-3 which provides:

"In all actions hereafter commenced against any insurance company * * * on any policy or certificate of any type or kind of insurance, if it appears from the evidence that such company * * * has refused to pay

the full amount of such loss, and that such refusal is vexatious or without reasonable cause, the court, if judgment is rendered for plaintiff, shall allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected as a part of the costs".

■ The trial court properly disallowed this item as part of the taxable costs. This is not an action against an insurance company on a policy of insurance within the contemplation of our statute. The gist of the action is tortious in nature i. e., for the wrongful refusal to settle within the policy limits of its insured. As explained in Kunkel v. United Security Ins. Co. of New Jersey, 84 S.D. 116, 168 N.W.2d 723, 733, "a breach of duty may arise from a contractual relationship, and while matters complained of may have their origin in contract, the gist of (the) action may be tortious."

■ In addition a finding that an insurer lacked good faith does not signify its conduct was "vexatious or without reasonable cause", as a matter of law. It merely means the insurer failed to discharge its fiduciary obligation to act in good faith in the defense and settlement of a claim against the insured. The situation here is unlike Tracy v. T & B Const. Co. et al., 85 S.D. 337, 182 N.W.2d 320, which was a direct action on a performance bond and the trial court expressly found the insurer's refusal to pay was vexatious or without reasonable cause.

It is impossible for us to review or determine whether or not the insurer is liable for prejudgment interest. The policy of insurance is not part of the record. In the preliminary summary to an extensive annotation on the subject of "Liability insurer's liability for interests and costs on excess of judgment over policy limit" appearing in 76 A.L.R.2d 983, the annotator points out that "In general, the determination of the question whether a liability insurer is liable for interest and costs on that part of a judgment recovered against the insured by a third party which is in excess of the amount limited by the policy depends upon the language employed by the parties in their contract".

Accordingly, the judgment appealed from by defendant is affirmed and the order denying taxation of attorney's fees as costs and prejudgment interest appealed from by plaintiff is likewise affirmed.

BIEGELMEIER, C. J., and WINANS and DOYLE, JJ., concur.

WOLLMAN, J., dissents.

WOLLMAN, Justice (dissenting).

Plaintiff's claim was based upon the insurer's refusal to settle following the jury verdict and prior to appeal. The trial court instructed the jury that:

"* * * At this stage of the case, taking all relevant factors into consideration, good faith on the part of the insurer requires that, giving equal consideration to the rights of the insured, the insurer is justified in concluding that there exists a reasonable probability that an appeal will result in a reversal of the trial court decision."

I would hold as a matter of law that the insurer was justified in relying upon the considered advice of two highly competent, experienced attorneys, acting independently of each other, that there was a reasonable probability that the decision in the wrongful death action would be reversed.

I would reverse the judgment.