## AMERICAN STATES INSURANCE COMPANY, Appellee,

v.

## STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Appellant.

No. 92–3067.

United States Court of Appeals, Eighth Circuit.

Submitted May 13, 1993.

Decided Oct. 4, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 16, 1993.

Richard O. Gregerson, Sioux Falls, SD, argued (John E. Simko and James E. Moore, on the brief), for appellant.

Steven M. Johnson, Yankton, SD, argued (Celia Minor, on the brief), for appellee.

Before BEAM, Circuit Judge, ROSS, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

ROSS, Senior Circuit Judge.

Appellant State Farm Mutual Automobile Insurance Company challenges a jury verdict in favor of American States Insurance Company, finding that State Farm acted in bad faith in failing to settle a claim against its insured within policy limits. Following the failure to settle, a jury awarded a judgment greatly in excess of State Farm's policy limits, leaving American States, as excess insurer, liable to the insured for the amount of judgment in excess of the State Farm policy.

I.

This bad faith case arose as a result of underlying litigation between Darlene Jensen and Sandra Mueller. Jensen, who carried underinsured motorist coverage with American States, was injured on December 16, 1986, as a result of an automobile accident with sixteen-year-old Sandra Mueller, State Farm's insured. When Sandra Mueller reported the claim, State Farm claims representative Karla Ryno began negotiating with Jensen to settle her claim. In January 1988, Jensen initially demanded $25,000 to settle her claim and State Farm responded by offering $12,000. At this time, Jensen's medical bills were approximately $4,000 and she

continued to suffer discomfort in her neck and back and to pursue medical treatment. In June 1988, Jensen retained counsel and afterwards raised her demand to $40,000. Her medical bills exceeded $7,500 at this time. No further demand nor offer was made until May 1989, approximately two and one-half years after the accident, when Jensen increased her demand to $110,000. State Farm responded by increasing its offer to $15,000.

On October 4, 1989, Jensen filed a complaint against Sandra Mueller. State Farm hired Craig Kennedy to defend Sandra. Because of Sandra's youth, Kennedy communicated primarily with Sandra's father, Gerald Mueller. At some point during the representation, Kennedy informed Sandra that because a verdict could exceed policy limits she should consider retaining personal counsel. When asked what option they would have if there was a verdict in excess of the policy limits, Kennedy responded that Sandra could file for bankruptcy. Thereafter, the Muellers retained Dick Hagerty to represent Sandra personally.

On April 1, 1990, when Jensen's medical bills amounted to $13,154.03, State Farm offered $20,000 to settle. Little movement occurred until August 8, 1990, three weeks before trial, when Jensen reduced her demand to $100,000. State Farm responded by increasing its offer to $30,000 on August 27, 1990.

On the eve of trial, Jensen's attorney presented a demand within policy limits for $85,000. The Muellers were not informed of this demand until the morning of trial. The demand, however, was refused and the trial began.

Although State Farm acknowledged its clear liability in its file, it contested liability at trial. The trial court, however, directed the verdict in favor of Jensen on the liability issue and the jury subsequently awarded Jensen $197,438 in damages. Because Mueller's State Farm insurance policy liability limit was $100,000, American States was liable to Jensen for $97,438 on her underinsured motorist policy.

After receiving an assignment from Sandra Mueller of her potential cause of action against State Farm, American States brought this bad faith cause of action against State Farm. The jury ultimately found in favor of American States for the amount of the excess verdict plus interest and costs. State Farm now appeals, arguing that the district court erred in failing to instruct the jury that Sandra Mueller's consent to State Farm's decision not to settle could bar American States' bad faith claim and that the value of Jensen's claim was fairly debatable and therefore State Farm did not act in bad faith in failing to settle the claim. We reject these arguments and affirm.

II.

State Farm first argues that the district court erred in refusing to instruct the jury that Mueller's consent to its decision not to settle could bar American States' bad faith cause of action. The district court refused the instruction, concluding that (1) South Dakota law does not provide that consent is a defense to a bad faith action; and (2) there was no evidence of consent in this case. Although State Farm acknowledges that the matter of consent is not the established law in South Dakota, it argues that consent is a legitimate defense in many jurisdictions and is in no way inconsistent with South Dakota law. We do not decide the question of whether South Dakota law would permit a consent defense in a bad faith action. Even assuming such a defense is available, we conclude that the court did not err in refusing the instruction because there was no evidence of consent in this case.

Those jurisdictions that recognize a consent defense have stated that the insured must be both fully informed and unequivocally consent to the insurer's refusal to settle. *See, e.g., McNally v. Nationwide Ins. Co.,* 815 F.2d 254, 264–65 & n. 13 (3d Cir.1987); *Certain Underwriters of Lloyd's v. General Accident Ins. Co.,* 909 F.2d 228, 234 (7th Cir.1990). We find neither factor present in the instant case.

Although the record indicates that Gerald Mueller was generally informed of the various offers and demands made prior to trial,

and of Jensen's total medical bills, Mueller testified that he was never given copies of medical reports, nor had an opportunity to review statements or depositions of Jensen's doctors or witnesses. State Farm never discussed with Mueller the possible verdict range, nor was he informed of the possible risks of going to trial. Mueller testified that he had no legal training or experience and that during the course of the four years between the time of the accident and the time of trial, he spoke with the State Farm attorney only five or six times. From these facts it cannot be said that Mr. Mueller was adequately informed of the legal proceedings to provide consent to State Farm's decision not to settle.

Nor do the facts establish that Mr. Mueller actually consented to State Farm's decision. State Farm bases its consent argument on a single spoken remark, addressed to Mark Gustafson, State Farm's claims representative, by Mr. Mueller. On August 29, 1991, the morning trial was to begin, Mr. Gustafson phoned Mr. Mueller at home to inform him of the $85,000 demand and of State Farm's $35,000 offer. Gustafson told Mueller that he believed the demand was in excess of the amount of the claim and, according to Gustafson, Mueller then agreed and responded by asking if State Farm would "look at a demand of 40 to 50,000 dollars." Gustafson responded that State Farm certainly would look at such a demand.[1] This was the extent of the conversation from which State Farm contends Mueller's consent was manifested.

This type of unintended acquiescence in Gustafson's remark concerning Jensen's demand falls far short of the "unequivocal" consent required by those jurisdictions that recognize a consent defense in a bad faith cause of action.[2] Mueller was not in a position to consent to State Farm's decision not to settle, either by virtue of his limited knowledge of the details of his case or his

complete lack of experience in insurance settlement negotiations. Mueller had never participated in a lawsuit before involving personal injuries and had no independent expertise in determining the value of Jensen's medical claim.

State Farm, by contrast, is an expert in these matters, and must be held to a higher standard than that of an unskilled layman. Common law instructs that courts must carefully scrutinize transactions where one party conducts a transaction both on behalf of himself and on behalf of another whose interest is adverse to his. *McNally, supra*, 815 F.2d at 265. "The party in charge of the transaction must conform to a higher standard of care than one who is entitled to act solely in his own interest." *Id.* "The view of a layman untrained in the law is a weak reed for an insurer to lean on." *Bowers v. Camden Fire Ins. Ass'n*, 51 N.J. 62, 237 A.2d 857, 864 (1968). Under these facts, insufficient evidence existed to support a consent instruction and the district court did not err in refusing to so instruct.

### III.

■ State Farm also argues that it could not have been liable for bad faith in failing to settle because Jensen's claim was fairly debatable. It claims it was entitled to judgment as a matter of law on the bad faith claim because the evidence was insufficient to support a finding of liability. Specifically, State Farm contends that American States failed to present substantial evidence that the value of Jensen's claim was not fairly debatable. It claims there was no reasonably sufficient evidentiary basis for the jury to have found for American States and as a matter of law the case should not have been submitted to the jury. Under South Dakota law, if substantial evidence exists which would allow reasonable minds to differ, the

---

**1.** We have found no evidence in the record to indicate that Hagerty, the Muellers' independent counsel, was advised of the $85,000 demand.

**2.** Consent was found where the insured "staunchly opposed any settlement," *Eklund v. Safeco Ins. Co.*, 41 Colo.App. 96, 579 P.2d 1185, 1186 (1978), and where the insured "actively

concurs" in the rejection of a settlement offer, *Jackson v. St. Paul–Mercury Indem. Co.*, 339 F.2d 40, 44 (6th Cir.1965), and where the insured "directed" that the insurer try the case, *Puritan Ins. Co. v. Canadian Universal Ins. Co.*, 775 F.2d 76, 80 (3d Cir.1985).

case must go to the jury. *Savold v. Johnson,* 443 N.W.2d 656, 658 (S.D.1989).

■■■ South Dakota has adopted a two-part test for determining bad faith liability. First, it must be demonstrated that the insurer has no reasonable basis for denying benefits, and, second, the insurer knows or recklessly disregards the fact that it has no reasonable basis upon which to deny benefits. *Kirchoff v. American Casualty Co.,* 997 F.2d 401, 405 (8th Cir.1993) (interpreting South Dakota law). Denial of benefits may be inferred from the insurer's failure to process or pay a claim, and the reckless disregard on the part of the insurer may be inferred when the insurer has exhibited "a reckless indifference to facts or to proofs submitted by the insured." *Id.* No liability attaches when the claim is "fairly debatable;" however, this defense does not apply where the insured's liability and the permanent and serious nature of the plaintiff's injuries are unchallenged, "even if the value of the claim was subject to dispute." *Id.*

State Farm argues the debatable nature of the claim is evidenced by conflicting medical testimony regarding the extent of Jensen's injury and its effect on her ability to work. Jensen saw several medical doctors and chiropractors throughout the course of her treatment prior to trial. Her primary treating physician, Dr. Neumayr, stated that because of her injury Jensen was 100% disabled and would be unable to work at her previous occupation as a hairdresser. State Farm argues, however that Dr. Gail Benson, an orthopedic surgeon, concluded conversely that Jensen would be able to continue her work as a hairdresser. However, Dr. Benson also determined that Jensen suffered a soft tissue injury to the neck that caused pain in the mid-thoracic region and resulted in a 16% permanent impairment of the spine. Dr. Benson further found that the injury would have a significant impact on Jensen's activities and that she would suffer pain and discomfort if she continued working as a hairdresser. Although State Farm places emphasis on the evidence that x-rays, a CT scan and an MRI conducted by Dr. Benson were all normal, the record indicates that these findings are consistent with a soft tissue injury.

State Farm did not make an effort to independently evaluate Jensen's claim. It chose not to conduct an independent medical examination and in fact offered no evidence to dispute American States' experts' conclusion that Jensen suffered a serious and permanent injury. There was nothing in State Farm's file to indicate that it even attempted to value Jensen's claim for purposes of settlement negotiations. However, State Farm had the foresight to inform the Muellers there was a chance the verdict could exceed the $100,000 policy limits and advised them to seek independent counsel. Under these facts, we conclude that State Farm exhibited a "reckless indifference to facts or to proofs submitted by the insured." *Kirchoff, supra,* 997 F.2d at 405.

In *Kirchoff,* a case remarkably similar to the one before us, and one involving South Dakota law, this court recently held that where the insured's liability is established, and objectively documented injuries and a physician's advice to quit working are essentially unchallenged, a jury's conclusion that the insurer's negotiations were not in good faith is sufficiently supported by the evidence. *Id.* Based on the record before us, we conclude that the jury's finding that State Farm acted in bad faith in failing to settle is sufficiently supported by the evidence.

### IV.

Based on the foregoing, the judgment of the district court is affirmed.

MORRIS SHEPPARD ARNOLD, dissenting.

I respectfully dissent from the court's judgment because I believe that the question of Mr. Mueller's informed consent was for the jury. There was enough evidence produced in this case to support a finding that Mr. Mueller consented to the way the litigation was being conducted and was therefore barred from later recovering for activity in which he freely and knowingly participated. Appellee, of course, as subrogee, stands in Mr. Mueller's shoes and therefore takes the

claim subject to any defenses with which it might be freighted.

I would have no difficulty predicting that the South Dakota Supreme Court would accept the proposition that Mr. Mueller's consent would be a valid defense to this action. Not only does such a legal proposition comport with common-sense notions about liability, the appellee cites not a single case to the contrary.

I would therefore reverse and remand this case for a new trial.