Sherpa v. Bondi

BIA
Cortes, IJ
A206 894 800

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of August, two thousand twenty-five.

PRESENT:
>            DEBRA ANN LIVINGSTON,
>                   *Chief Judge,*
>            BETH ROBINSON,
>            MYRNA PÉREZ,
>                   *Circuit Judges.*

_____

PHUSONGMU SHERPA,
>            *Petitioner,*

>      **v.**                                                    **23-6172**
>                                                                **NAC**

PAMELA BONDI, UNITED STATES
ATTORNEY GENERAL,
>            *Respondent.*

_____

**FOR PETITIONER:**     Stuart Altman, Esq., New York, NY.

**FOR RESPONDENT:**     Brian Boynton, Principal Deputy Assistant Attorney General; Justin Markel, Senior Litigation Counsel; Robert D. Tennyson, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Phusongmu Sherpa, a native and citizen of Nepal, seeks review of a January 31, 2023, decision of the BIA affirming a September 3, 2019, decision of an Immigration Judge ("IJ") denying her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Phusongmu Sherpa*, No. A 206 894 800 (B.I.A. Jan. 31, 2023), *aff'g* No. A 206 894 800 (Immig. Ct. N.Y. City Sept. 3, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

We have considered both the IJ's and the BIA's opinions "for the sake of completeness." *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). We review factual findings for substantial evidence and questions of law de novo. *See Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009). "[T]he

2

administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

**I.      Asylum and Withholding of Removal**.

An applicant for asylum and withholding of removal has the burden to establish past persecution or a fear of future persecution. *Id.* §§ 1158(b)(1)(B)(i), 1231(b)(3)(A); 8 C.F.R. §§ 1208.13(a)–(b), 1208.16(b). "To qualify as 'persecution' the conduct at issue must be attributable to the government, whether directly because engaged in by government officials, or indirectly because engaged in by private individuals whom the government is 'unable or unwilling to control.'" *Singh v. Garland*, 11 F.4th 106, 114 (2d Cir. 2021) (quoting *Scarlett v. Barr*, 957 F.3d 316, 328 (2d Cir. 2020)). Substantial evidence supports the agency's finding that Sherpa did not show that the conduct at issue was attributable to the government, either directly or indirectly.

Sherpa alleged harm by Biplav Maoists. While she asserts here that her attackers were government actors, as the Government argues, she did not exhaust this claim because her brief to the BIA challenged the IJ's "unable or unwilling to protect" finding and asserted that the Maoists had controlled the government at the time of her hearing, but did not allege that the individuals who attacked her

were affiliated with the government. *See Ud Din v. Garland*, 72 F.4th 411, 419 (2d Cir. 2023) (explaining that exhaustion is "mandatory in the sense that a court must enforce the rule if a party properly raises it" (quotation marks omitted)). Moreover, she does not address the BIA's conclusion that she waived review of the IJ's finding that her attackers were private actors. *See Prabhudial v. Holder*, 780 F.3d 553, 555–56 (2d Cir. 2015) (explaining that where the BIA finds an issue waived, "this Court's review is limited to whether the BIA erred in deeming the argument waived").

Even if exhausted, we would find no error in the agency's conclusion. Sherpa alleged harm by members of a political party or a splinter group of a political party. "An applicant's allegation that [s]he was persecuted by members of a political party—even one that is in power nationally or . . . is aligned with a party in power nationally—does not establish that the applicant was persecuted by the government." *Singh*, 11 F.4th at 115. Contrary to the implication in Sherpa's brief, *see* Petitioner's Br. at 11, she had the burden to establish that her attackers were state actors, *see* 8 U.S.C. § 1158(b)(1)(B)(i) (placing burden of proof on applicant). She failed to do so. Both before this Court and the BIA, Petitioner has argued only that her attackers were members of a rival political party, and

4

without more, party membership does not make a private party into a government actor. *See Singh*, 11 F.4th at 115.

Additionally, Sherpa did not establish that the government was unable or unwilling to protect her. She did not report the 2013 attack to the police. When asked why, she implied that the police could or would do nothing about Maoists and said that the precinct was far away. Sherpa argues that the agency cherry picked evidence, and that the fact that the Nepali government has outlawed the Biplav Maoists is insufficient to deny relief. Her evidence includes articles that describe a Biplav Maoist bombing of a telecommunications company, but which also report that the government was investigating the attack as a criminal act.[1] While the record reflects some corruption and abuses by the police, it also reflects efforts to investigate and prosecute such abuses. Certified Admin. Record at 203 (2018 State Dep't Report for Nepal) ("The High Level Enquiry Commission . . .

---

[1] The agency was not required to explicitly discuss or credit statements from Sherpa's siblings, neighbors, and an official from Sherpa's political party, most of which do not address the government's willingness or ability to protect her. *See Likai Gao v. Barr*, 968 F.3d 137, 149 (2d Cir. 2020) (holding that "the IJ acted within her discretion in according . . . little weight [to letters]" because their authors were interested parties who were not available for cross-examination); *Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013) ("We generally defer to the agency's evaluation of the weight to be afforded an applicant's documentary evidence.").

formed to investigate allegations of excessive use of force by the Nepal Police and [the Armed Police Force] completed its investigation of more than 3,000 complaints[.]"), 207 (noting responsibility of the police in combatting terrorism, and that it has a "human rights section" with "independent investigative powers" which had received 144 complaints of human rights violations and had punished 67 officers), 243 (article noting that police were investigating Biplav bombing); *but see id.* at 203 ("[T]he government had not made the [excessive force] report public."), 207 ("Lack of punishment or accountability for police abuses remained problems."). On this record, the agency reasonably concluded that Sherpa failed to establish that the Nepali government was unable and unwilling to protect her.

Sherpa's failure to establish that the government was or is unable or unwilling to control Biplav Maoists is dispositive of both asylum and withholding of removal. *See Singh*, 11 F.4th at 114. Accordingly, we do not reach the agency's alternative fundamental change finding. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

**II.    CAT Relief**

A CAT applicant has the burden to show she will "more likely than not" be tortured by or with the acquiescence of government officials.    8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1).[2]    More likely than not means "there is greater than a fifty percent chance . . . that [the applicant] will be tortured."    *Mu-Xing Wang v. Ashcroft*, 320 F.3d 130, 144 n.20 (2d Cir. 2003).    "Acquiescence 'requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity.'"    *Quintanilla-Mejia*, 3 F.4th at 592 (quoting 8 C.F.R. § 1208.18(a)(7)).

Sherpa has waived review of her CAT claim by failing to adequately argue it; her brief states, without citation to the record or case law, that the IJ ignored evidence of torture, in that "[t]he record clearly shows that the Biplav Maoists have killed people" and that she is afraid she will be raped.    *See Yueqing Zhang v. Gonzales*, 426 F.3d 540, 545 n.7 (2d Cir. 2005) (deeming argument abandoned where brief devoted "only a single conclusory sentence" to it).    Even if not waived, the claim would fail on the merits.

---

[2] This order refers to the regulations prior to amendments intended to go into effect in January 2021, which are subject to a nationwide injunction.    *See Pangea Legal Servs. v. U.S. Dep't of Homeland Sec.*, No. 20-09253-JD, 2021 WL 75756 (N.D. Cal. Jan. 8, 2021).

When determining the likelihood of torture, the agency considers, inter alia, "[e]vidence of past torture," the ability to internally relocate, evidence of "gross, flagrant or mass violations of human rights within the country of removal," and "[o]ther relevant information regarding conditions in the country of removal." 8 C.F.R. § 1208.16(c)(3). As the agency found, Sherpa was threatened and hit, resulting in a minor injury, but was not otherwise harmed and therefore did not experience past torture. *See Kyaw Zwar Tun v. INS*, 445 F.3d 554, 567 (2d Cir. 2006) ("[T]orture requires proof of something more severe than the kind of treatment that would suffice to prove persecution.").

As noted with respect to asylum and withholding of removal, the record reflects isolated political violence; however, such violence does not establish, as a CAT claimant must, "that someone in [her] particular alleged circumstances is more likely than not to be tortured," particularly given government efforts to ban and prosecute Biplav Maoists. *Mu Xiang Lin v. U.S. Dep't of Just.*, 432 F.3d 156, 160 (2d Cir. 2005) (emphasis and quotation marks omitted); *see also Quintanilla-Mejia*, 3 F.4th at 592 (A petitioner "cannot secure CAT relief by pointing to conflicting evidence that might support—but not compel—a different conclusion.").

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court